Brett Lewis, Esq.
brett@iLawco.com
Justin Mercer, Esq.
justin@iLawco.com
LEWIS & LIN, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Counsel for Plaintiff David Michaels*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID MICHAELS,<br><br>                                      *Plaintiff*,<br><br>        v.<br><br>AGROS TRADING CONFECTIONERY SPÓŁKA AKCYJNA,<br><br>                                      *Defendant*. | Case No.: 1:16-cv-01015<br><br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff David Michaels ("Michaels" or "Plaintiff"), by and through his undersigned

attorneys, for his Complaint against Defendant Agros Trading Confectionery Spółka Akcyjna

("Agros Confectionery" or "Defendant"), alleges as follows:

## NATURE OF ACTION

1.      Plaintiff David Michaels brings this complaint against Defendant for a

Declaration from this Court that: (i) Plaintiff has not violated the Anti-Cybersquatting Consumer

Protection Act (ACPA), 15 U.S.C § 1125(d) and is the rightful registered name holder or

registrant of the 5 "SesameSnaps" domain name registrations that are subject to a transfer

decision issued by a WIPO UDRP Panel on December 5, 2016: <SesameSnap.com>,

<SesameSnaps.com>, <SesameSnaps.net>, <SesameSnaps.org>, and <SesameSnaps.biz>
(hereinafter "Domain Names"), and seeks to bar their transfer to Agros Confectionery.

2.      Plaintiff further seeks monetary and/or statutory damages and attorneys' fees for
reverse domain name hijacking under 15 U.S.C. § 1114(2)(d)(iv).

## THE PARTIES

3.      David Michaels is an individual with his principal place of business at 11
Vincentian Drive #1288, Niagara University, NY, 14109.

4.      Upon information and belief, Agros Confectionary is a joint-stock company with
a principal place of business at al. Jana Pawła II 27, 00-867 Warszawa, Poland. Upon
information and belief, Defendant was originally registered in 2002 as "Agros Trading
Confectionery Spolka z.o.o.," as a limited liability company, also in Poland.

## JURISDICTION AND VENUE

5.      Pursuant to 28 U.S.C. §§ 2201(a) and 2202, Michaels seeks a declaration and
judgment regarding his rights and obligations in an actual controversy within this Court's
jurisdiction between Michaels and Agros Confectionery concerning Michaels' rights in and to
the Domain Names.  Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331,
giving this Court original jurisdiction in a civil action raising a federal question, and 28 U.S.C. §
1338(a), giving this Court original and exclusive jurisdiction in a civil action arising under the
trademark laws of the United States.

6.      Defendant consented to the jurisdiction of this Court in connection with the filing
of an administrative complaint in *Agros Trading Confectionary Spolka Akcyjna v. Michaels*,
Case No.: D2016-1827 (WIPO, Nov. 20, 2016) (the "Administrative Action.").  Michaels
represented himself in the Administrative Action.

7.     Pursuant to UDRP Policy 4(k), Defendant was required to submit to the jurisdiction of the courts at the location of either:

> (a) the principal office of the Registrar . . . or (b) <u>the domain-name holder's address as shown for the registration of the domain name</u> in Registrar's Whois database at the time the complaint is submitted to the Provider.

Rules for Uniform Domain Name Dispute Resolution Policy ("Policy") (emphasis added).  Defendant chose (b).

8.     As Plaintiff's address, as listed in the whois records for <SesameSnap.com> and <SesameSnaps.com> is located in Niagara University, New York, this Court has personal jurisdiction over the Defendant.

9.     In accordance with the Uniform Dispute Resolution Policy (the "Policy"), Michaels is required to commence an action with this Court in order to stop the transfer of the Domain Names to Agros Confectionery as ordered by the panel in the Administrative Action.

## <u>BACKGROUND</u>

*What's a Sesame Snap?*

10.     The term "sesame snaps" is the generic name of a type of brittle cookie, which is made, eaten, and enjoyed around the world.

11.     Just like "ginger snaps," "chocolate chip" and "oatmeal raisin" are not protectable terms for types of cookies, the phrase "sesame snaps" is not a protectable mark.

12.     Sesame snaps are cookies made primarily from sesame seeds plus binders, such as honey, glucose syrup, and sugar.  The sesame seeds are usually baked before being fried with a binder into thin brittle wafers called snaps.

13.     Both Plaintiff and Defendants sell sesame snap cookies and bars.

14.     There are many manufacturers of sesame snaps cookies in the USA, Poland, and around the world.

15.     There are multiple brands of sesame snaps goods available for purchase in the USA, Canada, the UK, Poland and elsewhere. These brands are owned by a number of unrelated parties.

16.     There are also numerous recipes for "sesame snaps" available in cooking books and on the Internet.  A search for "sesame snaps recipes" on Google yields over 400,000 results.

17.     Michaels promotes recipes for sesame snaps through his Web site, located at www.SesameSnap.com.

18.     Defendant sells its sesame snap cookies, simply as "Sesame Snaps."  Plaintiff sells its sesame cookies under the names "Sesame Snaps," and "Classic Sesame."

19.     Both parties sell their cookies in the United States.

*The Domain Names*

20.     Michaels is the registered owner of the Domain Names, each of which wholly incorporate the generic term "sesame snaps."

21.     Michaels has been the registered owner of the <sesamesnaps.net>, <sesamesnaps.org>, and <sesamesnaps.biz> domain names since December 29, 2012.

22.     The <sesamesnap.com> domain name was registered on December 18, 2005. Michaels has been the registered owner of the <sesamesnap.com> domain name since January 20, 2013, and maintains a sesame snap recipe website at www.sesamesnap.com.

23.     The <sesamesnaps.com> domain name was registered on December 25, 2009. Michaels has been the registered holder of the <sesamesnaps.com> domain name since January 22, 2014, and maintains an eCommerce website at www.sesamesnaps.com.

24.     Since October 3, 2014, Michaels has sold sesame products, namely sesame sticks and sesame snap cookies under the names, "Classic Sesame" and "Sesame Snaps" from his Web site, located at www.Sesamesnaps.com, to customers throughout the United States.

*Michaels' Predecessors-in-Interest*

25.     Michaels acquired his sesame snaps business, including all intellectual property rights, from K-Max Corp. ("K-Max,"), which acquired the business from Dalimpex Ltd. "Dalimpex."

26.     Dalimpex was a large enterprise importing, promoting and distributing a variety of industrial machinery, agricultural foods, food preserves, and confectionery products made to its specification under 14 of its own brands in Canada and the USA, since incorporating in Canada in 1965.

27.     Dalimpex promoted and distributed sesame seed snaps and honey sesame seed snaps under its Sesame Snaps brand, since at least 1971 in Canada.  It later introduced its Sesame Snaps product into the USA.

28.     The USPTO issued Dalimpex US Registration No 2627618 (the "7618 Mark") on Oct. 1, 2002 for its SESAME SNAPS CANDY/ FRIANDISE and design trademark for "Candy, namely sesame snaps."  This registration claimed use of this particular design trademark in US commerce since 1998, and, notably disclaimed "SESAME SNAPS" AND "CANDY/FRIANDISE," as generic.  The registration was cancelled on May 16, 2009 for failure to submit a specimen of use under section 8 of the Lanham Act after 6 years of registration.



29.     Around the same time, Dalimpex borrowed money from K-Max, beginning on January 2, 2001 in 8 monthly tranches, for a total of $348,964.89. The loan agreement was secured by Dalimpex Ltd's intellectual property, including its rights in the 7618 Mark and sesame snaps business.

30.     Dalimpex defaulted on the loan and, in turn, relinquished its ownership of the pledged intellectual property, including the 7618 Mark, to K-Max on Feb 6, 2002.

31.     K-Max carried on Dalimpex's business and was the owner of its Sesame Snaps brand in both Canada and the USA between 2002 and 2012.

32.     K-Max registered the <sesamesnaps.com> domain name in 2002 or 2003.

33.     In 2003, K-Max published a landing page using the same font that Dalimpex had used on its Sesame Snaps packaging.

34.     In 2003, K-Max redesigned its packaging to feature spread out leaves of sesame snaps for its point of sale boxes that it sold to Costco.

35.     K-Max sold its Sesame Snaps in Canada to Costco and to Polish food specialty stores. Small businesses and individuals buying from Costco then imported K-Max's Sesame Snaps into the USA for resale on Amazon.com and at various Polish food specialty stores in the USA.

36.     K-Max sourced its sesame snaps product from multiple suppliers before agreeing to exclusively purchase its product from P.P.H.U. Unitop and later its successor, Unitop-Optima S.A., in exchange for a price reduction.

37.     Agros Confectionery began selling 24-packs of sesame snaps using K-Max's spread out leaf packaging design in or about 2006 or 2007.  Agros Confectionery was the export agent for Unitop-Optima S.A.

38.     In or around 2009, Tomasz Grabowski visited K-Max in Canada.  He requested to see where K-Max sold its sesame snaps product, and to be introduced to its retail buyers.

39.     Following Grabowski's trip to Canada, Agros Confectionery informed K-Max that Agros Confectionery was now the owner of the Sesame Snaps trademark in Canada.  Agros Confectionery also directed K-Max not to source its sesame snaps product from any supplier other than Unitop-Optima S.A.

40.     Shortly after, K-Max confirmed that Agros Confectionery had registered Sesame Snaps as a trademark in Canada in 2008.  Michaels was consulting for K-Max at the time, and performed the trademark search.

41.     At the same time, Michaels also discovered that PRZEDSIEBIORSTWO HANDLU ZAGRANICZNEGO AGROS ("PHZ Agros"), a Polish state-owned enterprise, had acquired Canadian design trademark registrations in 1987, which disclaimed the words "sesame snaps."  These registrations, which fraudulently claimed both use in commerce in Canada and a first use date of 1971, were also assigned to Agros Confectionery in 2007.

42.     By September 2009, Unitop-Optima S.A. began limiting its supply of sesame snaps product to K-Max.

43.     As K-Max did not have the financial ability to maintain drawn out litigation to cancel Agros Confectionery's Canadian trademark registrations, K-Max decided to rebrand.  K-Max filed an application to register CLASSIC SESAME in Canada on January 4, 2010 and in the USPTO on January 7, 2010 for its sesame snaps confectionery products.

44.     K-Max also filed an application to register its current Sesame Snaps design mark with the USPTO on May 26, 2010, in application No. 85045757.

45.     After receiving a notice of allowance from the Canadian Trademarks Office in 2011 and the USPTO, the then owner of K-Max sold the corporation back to its founder, Kriz Werocy, so that K-Max could find another supplier for its Classic Sesame branded sesame snaps and continue the business.

46.     K-Max obtained Canadian Trademark registration no. TMA830204 for the words "Classic Sesame" after selling a shipment of its Classic Sesame branded sesame snaps and filing a statement of use in July 2012.

47.     On July 4, 2012, Michaels acquired from K-Max its entire interests and goodwill in the Sesame Snaps trademark around the world.  The assignment was filed with the USPTO on August 16, 2012, and is a matter of public record.

48.     Thereafter, Michaels built a landing page at www.sesamesnaps.ca, and began doing market research on how best to re-enter the US market for sesame sticks and sesame snaps.

49.     Michaels launched an operational eCommerce website for www.sesamesnaps.com targeted at the U.S. market on October 3, 2014.

50.     Michaels owns a U.S. trademark for Sesame Snaps and design, U.S. Reg. No. 5086046, for "on-line retail store services featuring sesame based food products and

computerized on-line retail store services in the field of sesame based food products."  That

registration disclaims exclusive rights to "sesame snaps."

*Agros Confectionery*

51.     Agros Confectionery is an export representative or a broker for Polish

confectionery producers, "co-packers," who manufacture sesame snaps, cream fudge and wafers.

52.     Agros Confectionery operates from a suite in an office building at al. Jana Pawła

II 27, 00-867 Warszawa, Poland as shown in their website at

http://sesamesnaps.ca/en/index.aspx:



53.     Agros Confectionery primarily represents a co-packer called UNITOP-OPTIMA

S.A., which is based in Łódź, Poland, some 140 km away from the Defendant's office in

Warsaw.

54.     UNITOP-OPTIMA S.A. owns 99.48% of Agros Confectionery.

55.     Since a subsidiary entity cannot control its parent corporation, a subsidiary cannot own a trademark for a product produced by its parent corporation.

56.     Food entrepreneurs often seek a co-packer, or co-manufacturer, which is an established food company that processes and packages food products according to an entrepreneur's specifications. Food entrepreneurs are out of the kitchen and can take advantage of a co-packer's expertise. Food entrepreneurs also have more time to promote and distribute their products and their brand by outsourcing production and packing.

57.     Agros Confectionery's representatives have travelled to the USA and exhibited at trade shows, including in New York, seeking food entrepreneur brand owners who are looking for a private label co-packer to make and package their sesame snaps, cream fudge and wafers, as they specifically indicate on their website.

58.     Agros Confectionery has no exclusive rights to the "Sesame Snaps mark in the United States.

59.     Agros Confectionery has no exclusive rights to the Sesame Snaps mark in Poland.

60.     Dalimpex never assigned any trademark rights in its Sesame Snaps marks to Agros Confectionery.

*The UDRP Proceeding*

61.     In September 2016, Agros Confectionery filed a proceeding with WIPO under the Uniform Domain Dispute Resolution Policy or "UDRP," in which Agros Confectionery blatantly misrepresented the facts concerning its fraudulently-obtained Canadian trademark registrations.

62.     A single-member WIPO Panel issued a transfer decision in favor of Agros Confectionery on December 5, 2016.

63.     Pursuant to the UDRP Complaint, Agros Confectionery consented to suit in this jurisdiction.

64.     Plaintiff filed this action to stop the Panel's decision from being implemented, and for the further relief stated above and otherwise herein.

*Agros Confectionery has no rights to Sesame Snaps in the United States*

65.     Agros Confectionery has filed multiple trademark applications for "SESAME SNAPS" marks with the USPTO, starting in 2009.  All of them have been denied.

66.     In each case, examining attorneys have found that Defendant's applied-for mark is generic in connection with the identified goods and, therefore, incapable of functioning as a source-identifier for applicant's goods.

67.     Agros Confectionery does not own any US trademark registration for a Sesame Snaps trademark without a disclaimer of the words "Sesame Snaps."

68.     In both of Agros Confectionery's US trademark registrations, they disclaimed the exclusive use of the words "sesame snaps:"

A.      In US Reg. 4227082 for AMKI ORIGINAL SESAME SNAPS design, claiming their goods as "Cookies, namely, sesame snaps," they disclaim: "ORIGINAL SESAME SNAPS;"

and

B.      In US Reg. 4315517 for SESAME SNAPS DELICIOUS TRY ONE SEZME BRAND design, claiming their goods as, "Cookies, namely, sesame bars, sesame snaps," they disclaim: "SESAME SNAPS" AND "BRAND."

69.     Accordingly, Agros Confectionery has no registered or common law rights to the term "sesame snaps," as a trademark, in the United States.

*The Reverse Domain Name Hijacking*

70.     Defendant first acquired the Sesame Snaps mark in Canada, through fraudulent filings with the Canadian trademark office, as further set forth below, and subsequently used the UDRP – an administrative policy designed only for cases of abusive cybersquatting – to reverse hijack the Domain Names from their rightful holder.

71.     Defendant withheld facts concerning Plaintiff's rights to the Domain Names, and the history of Defendant's relationship to Plaintiff's predecessor companies, and misled the Panel concerning the scope of Defendant's trademark rights in Canada.

72.     Specifically, Defendant falsely claimed that "PHZ Agros was a predecessor company which was restructured into Agros Holding S.A.," and that "[i]t had trademark rights in Sesame Snaps from at least January, 1971."

73.     Defendant further claimed that, "[t]he rights of the complainant have been used consistently and in accordance with the various registrations by all the predecessor companies leading to the complainant."

74.     Defendant also claimed that, "[i]n or about the late 1990's or early 2000's, Dalimpex commenced legal proceedings in Ontario, Canada against Agros Trading Confectionery Sp. z.o.o. attempting to assert intellectual property rights over 'Sesame Snaps.'."

75.     However, Agros Trading Confectionery Sp. z.o.o. did not even exist before 2002.

76.     Dalimpex had commenced an action in Ontario against an entity unrelated to the Defendant, called "Agros Trading Sp. z.o.o." in 1998, for various business torts that impaired and eventually crippled a $70 million/year business.

77.     Agros Confectionery also claimed that, "the Canadian courts and authorities have already adjudicated on the respective rights of the parties relating to the relevant trademarks and have determined that the company which is represented by the respondent has infringed the

intellectual property rights of the complainant."  In fact, this statement was misleading, as Michaels had never been a party to any action in Canada with Agros Confectionery, and the adjudication in question concerned different issues, and was decided on default.

78.    Defendant also omitted any reference to the USPTO's findings that its purported sesame snaps marks were generic.

*The Fraudulent Canadian Trademark Registrations*

79.    In 2008, Agros Confectionery obtained Canadian trademark registrations nos. TMA728997 and TMA728998 for the mark Sesame Snaps by:

A.    Specifying its goods as "Confectionery products, namely, sesame bars."

B.    Fraudulently claiming use of the mark Sesame Snaps in Canada since 1971.

80.    A trademark is not registrable, under section 12(1)(c) of the Canadian Trademarks Act, if it is the name in any language of any of the goods in connection with which it is used or proposed to be used.

81.    Agros Confectionery misidentified its goods in its Canadian trademark applications; they were not sufficiently specific and they are misleading.

82.    A Canadian trademark registration can be invalidated by two types of misstatements:

(i)    fraudulent, intentional misstatements; and

(ii)    nnocent misstatements that are material in the sense that without them the section 12 of the Canadian Trademarks Act barriers to registration would have been insurmountable.

83.    If Agros Confectionery had properly designated its goods as "sesame snaps" in Canadian application 1373036, the CIPO examiner would have rejected the application and Canadian registration TMA728997 for the words SESAME SNAPS would not have issued.

84.     If Agros Confectionery had properly designated its goods as "sesame snaps" in Canadian application 1373027, the CIPO examiner would have rejected the application and Canadian registration TMA728998 for the words SESAME SNAPS would not have issued without a disclaimer for the words SESAME SNAPS.

85.     The Canadian trademark registration TMA332105 is identical to the mark in Canadian registration TMA728998, except that the mark has a disclaimer: "The right to the exclusive use of the words SESAME SNAPS is disclaimed apart from the trade-mark." Color is claimed as a feature of both of the marks: Claim to red lettering surrounded by a blue border.

*Agros Confectionery's Fraudulent Claim of Use Since 1971*

86.     Agros Confectionery filed an assignment of TMA332105 from Agros Holding SA on June 11, 2007.  The assignment, made by an unrelated company named Agros Holding SA in 2002, is a naked assignment.  It does not transfer any goodwill in the mark to Agros Confectionery.

87.     In Agros Confectionery's latest rejected USPTO application for a Sesame Snaps design: SN 86411335, the Defendant fraudulently claimed use of the mark on goods as cookies since 1971, even though it only came into existence in 2002.

88.     Agros Confectionery did not exist prior to 2002 and it did not name any predecessors-in-interest in its Canadian trademark applications or USPTO applications.

<u>COUNT I:</u>
<u>CLAIM FOR DECLARATORY RELIEF</u>

89.     Michaels repeats and realleges paragraphs 1 through 88 of this Complaint, which are incorporated herein.

90.     The term "Sesame Snaps" is generic when used in connection with sesame snap bars and cookies.

91.     A number of different third party companies sell "sesame snaps" around the world.

92.     A person may register a generic word or phrase as a domain name on a first come, first served basis, as a general rule.

93.     Michaels sells sesame snaps through his Web site, located at www.SesameSnaps.com.

94.     Michaels acquired the assets of K-Max, a company, which sold sesame snap cookies under the name, "Sesame Snaps," from 2002-2012.

95.     K-Max took over the business of Dalimpex, which sold Sesame Snaps in the U.S. and Canada since before 1971 and owned a trademark registration in the United States for Sesame Snaps Candy (disclaiming the terms "sesame snaps" and "candy").

96.     Michaels registered the Domain Names in good faith, in furtherance of his business of selling sesame snaps.

97.     Michaels, in fact, uses the Domain Names to sell sesame snaps.

98.     Defendants own no exclusive rights to the term, "sesame snaps" in the United States, and have had several such applications rejected by the USPTO on the basis of genericness.

99.     Defendants filed the Administrative Action, claiming that the Domain Names were registered and used in bad faith.

100.    The Policy provides that administrative panel decisions may be stayed, and that subject domain name disputes may be resolved in a court of competent jurisdiction.  The courts have held that such review is to be made *de novo*.

101.    A justiciable controversy exists between Michaels and Agros Confectionery.

102.     To resolve this actual controversy, Michaels seeks a declaration and judgment that his registration and use of the Domain Names is a valid use, and canceling the transfer order of the panel in the Administrative Action.

103.     Agros Confectionery's conduct has harmed and will continue to harm Michaels, thereby entitling Michaels to recover actual and/or statutory damages and attorney's fees and costs.

## COUNT II:
## BAD FAITH UDRP COMPLAINT: REVERSE DOMAIN NAME HIJACKING

104.     Michaels hereby incorporates the allegations of paragraphs 1 through 88 as if set forth here in full.

105.     Agros Confectionery initiated the UDRP proceeding against Michaels in a bad faith attempt to deprive Michaels of the Domain Names, when Agros Confectionery had no exclusive right to the name sesame snaps throughout the world or even in the USA.

106.     Under the UDRP rules, Agros Confectionery had a duty to certify that the information contained in its UDRP Complaint and in its responses to procedural orders were, to the best of their knowledge, complete and accurate.

107.     Instead, Agros Confectionery knowingly provided the UDRP panel with false, incomplete, and misleading information concerning its rights in its purported "sesame snaps" marks, in connection with its bad faith scheme to gain control over the Domain Names.

108.     The false and misleading allegations were accepted by the UDRP Panel and published in a WIPO decision.  As a result of the decision, the Domain Names were ordered transferred.  In fact, three of the Domain Names, <SesameSanps.net>, <SesameSnaps.org>, and <SesameSnaps.biz>, have been transferred.

109.    Plaintiff's other Domain Names, <SesameSnap.com> and <SesameSnaps.com>
have been locked beyond Plaintiff's full enjoyment of the benefits of registration thereof in
consequence of false statements made by Defendant under the UDRP followed by Domain Name
registrar Go Daddy.  The Domain Names would all be transferred to Defendant if not for this
action.

110.    Plaintiff has provided Defendant with notice of this action.

111.    The UDRP panel's decision in favor of Agros Confectionery was based on Agros
Confectionery's knowing and material misrepresentations that the Domain Names are identical
or confusingly similar to a trademark or service mark in which Agros Confectionery had rights
as of the date of the registration of the domain name.

112.    Agros Confectionery's conduct was knowing, intentional, and improper and
caused Michaels to suffer damages that will be established at trial.

113.    Plaintiff has incurred costs, including, without limitation, attorneys' fees and
court costs, among other business and reputational damages, in seeking to prevent the transfer of
the Domain Names.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

A.    Declaration by the Court that Defendant has no trademark rights that are subject
to protection in the United States;

B.    Declaration by the Court that, pursuant to 15 U.S.C. § 1114(2)(D)(iv)-(v),
Plaintiff is entitled to registration, ownership and use of the Domain Names;

C.    Declaration by the Court that, pursuant to 28 U.S.C. § 2201, Plaintiff's
registration of the Domain Names is lawful and does not infringe on any trade or service mark
right the Defendant may claim in the United States;

D.      A Judgment that Defendant has knowingly and materially misrepresented that the

Domain Names are identical or confusingly similar to a mark in which Defendant has rights.

E.      Damages according to proof at trial, but in an amount not less than $100,000-per-

incidence of reverse domain name hijacking;

F.      Punitive damages according to proof at trial;

G.      Costs and expenses, including costs under 15 U.S.C. § 1114(2)(D)(iv)-(v) and

reasonable attorneys' fees; and

H.      For such other and further relief as this Court deems just and proper.

Dated:      Brooklyn, New York
            December 19, 2016

                    LEWIS & LIN, LLC


                    By: _/s/ Brett Lewis_____
                    Brett Lewis, Esq.
                    Justin Mercer, Esq.
                    45 Main Street, Suite 608
                    Brooklyn, NY 11201
                    Tel: (718) 243-9323
                    Fax: (718) 243-9326
                    Email: brett@iLawco.com
                            justin@iLawco.com

                    *Counsel for Plaintiff*