UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID MICHAELS,

        *Plaintiff*,

    v.

AGROS TRADING CONFECTIONERY
SPÓŁKA AKCYJNA,

       *Defendant/Counterclaimant*

Case No.: 1:16-cv-01015

**ANSWER WITH AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS**

JURY TRIAL DEMANDED

---

Defendant/Counterclaimant AGROS TRADING CONFECTIONERY SPÓŁKA AKCYJNA also known as Agros Trading Confectionery S.A. ("Agros" or "Defendant"), as and for its Answer to the Complaint of Plaintiff David Michaels ("MICHAELS" or "Plaintiff"), herein states:

## ANSWER

1.     The allegations in Paragraph 1 state conclusions of law to which no answer is required. To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

2.     Defendant ADMITS the allegations contained in Paragraph 2 of the Complaint.

## THE PARTIES

3.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 3, and therefore, DENIES same and demands strict proof at trial.

4.      In response to Paragraph 4 of the Complaint, Defendant ADMITS that it is a joint-stock company with a principal place of business at al. Jana Pawła II 27, 00-867 Warszawa, Poland, and that it was formed as a limited liability company named "Agros Trading Confectionery Spolka z.o.o." in 2002; but DENIES that it was "originally registered" in 2002.  By way of further response, upon information and belief, Agros and its predecessors-in-interest and affiliated companies date back to 1966 when PHZ Agros was originally created.

## JURSIDICTION AND VENUE

5.      Defendant ADMITS the allegations contained in Paragraph 5 of the Complaint.

6.      Defendant ADMITS the allegations contained in Paragraph 6 of the Complaint.

7.      Defendant ADMITS the allegations contained in Paragraph 7 of the Complaint.

8.      After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 8, and therefore, DENIES same and demands strict proof at trial.

9.      The allegations in Paragraph 9 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

10.      Defendant DENIES the allegations contained in Paragraph 10 of the Complaint.  By way of further response, Defendant and its predecessors in interest have used the SESAME SNAPS mark in many markets since the 1960's to identify and brand its many different products under the SESAME SNAPS mark and name.

11.      Defendant DENIES the allegations contained in Paragraph 11 of the Complaint.

12.     Defendant ADMITS the allegations contained in Paragraph 12 of the Complaint.

13.     Defendant ADMITS only so much of paragraph 13 of the Complaint which alleges that Defendant sells, among other things, its own branded SESAME SNAPS, in cookie and bar form, and further DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the remainder of the allegations contained in said paragraph and demands strict proof at trial.

14.     In response to Paragraph 14 of the Complaint, Defendant ADMITS only so much of Paragraph 14 of the Complaint which alleges that there are other manufacturers of sesame cookies globally, and DENIES that there are "many manufacturers of *sesame snaps* cookies."

15.     Defendant DENIES the allegations contained in Paragraph 15 of the Complaint.

16.     Defendant ADMITS only so much of Paragraph 16 of the Complaint which alleges that many third parties refer to "Sesame Snaps" online, and DENIES the remainder of the allegations contained in said paragraph.

17.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 17, and therefore, DENIES same and demands strict proof at trial.

18.     In response to Paragraph 18 of the Complaint, Defendant ADMITS only so much of said paragraph which alleges that both parties sell sesame cookies and other sesame products, and DENIES the remainder of the allegations contained in Paragraph 18 of the Complaint.

19.     Defendant ADMITS the allegations contained in Paragraph 19 of the Complaint.

20.    In response to Paragraph 20 of the Complaint, Defendant ADMITS only so much of said paragraph which alleges that Plaintiff is the registrant of the domain names, which incorporate Defendant's SESAME SNAPS trademark that are the subject of this Complaint.  The remaining allegations in Paragraph 20 are DENIED and Defendant demands strict proof at trial.

21.    Defendant ADMITS the allegations contained in Paragraph 21 of the Complaint.

22.    Defendant ADMITS the allegations contained in Paragraph 22 of the Complaint.

23.    Defendant ADMITS the allegations contained in Paragraph 23 of the Complaint.

24.    After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 24, and therefore, DENIES the same and demands strict proof at trial.

25.    The allegations in Paragraph 25 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

26.    Defendant ADMITS that Dalimpex was an importer of different products from Poland, including SESAME SNAPS cookies produced by Defendant's predecessors-in-interest; Defendant DENY the remainder of the allegations contained in Paragraph 26 of the Complaint.

27.    Defendant ADMITS that Dalimpex "promoted and distributed" various cookies in Canada since the early 1970s, but specifically DENIES that Dalimpex distributed sesame cookies under "its Sesame Snaps brand."  Defendant also ADMITS that at some point in time that Dalimpex distributed sesame cookies in the U.S.  In further response, Dalimpex was an importer of SESAME SNAPS cookies produced by Defendant's predecessors-in-interest.  Defendant DENIES any of the remaining allegations contained in Paragraph 27 of the Complaint.

28.     The allegations in Paragraph 28 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

29.     Defendant is aware that there was an alleged loan agreement between Dalimpex and K-Max, but does not have direct knowledge surrounding the transaction and any purported default.  Accordingly, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 29, and on that basis DENIES each and every allegation contained therein.

30.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 30, and therefore, DENIES same and demands strict proof at trial.

31.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 31, and therefore, DENIES same and demands strict proof at trial.

32.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 32, and therefore, DENIES same and demands strict proof at trial.

33.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 33, and therefore, DENIES same and demands strict proof at trial.

34.     Defendant DENIES that K-Max owned rights to the SESAME SNAPS mark, design and packaging; Defendant ADMITS that K-Max was a distributor of Defendant and K-Max cooperated with Defendant and changed the display box for the Canadian market, but the single unit pack was not changed at all.   Defendant DENIES the remainder of the allegations contained in Paragraph 34 of the Complaint.  By way of further response, Defendant has and continues to cooperate with its local distributors, of which K-Max was once, to redesign packaging used to adopt new versions to the demands of the local market, which often use local designers that modernize the look. At the time referenced, Defendant worked with K-Max on the design, however the main design features were not altered (logo, colors, shape remained consistent with Defendant's packaging.) and only some minor graphical changes were made (pictures of the sesame leaves added to the design).   Further, in or around the same time, Agros used other distributors in Canada, including but not limited to S&F Food Importers, that sold Agros' SESAME SNAPS cookies with the same packaging design and marks K-Max sold on behalf of Agros.  In other words, K-Max did not own or have any exclusive rights to the marks or packaging design.

35.     Defendant ADMITS that K-Max was a distributor of Defendant and it sold and distributed Defendant's SESAME SNAPS cookies; Defendant DENIES the remainder of the allegations contained in Paragraph 35 of the Complaint.

36.     Defendant ADMITS that K-Max sourced its products from PPHU, formal name: PPHU Unitop Krzysztof Bubrowiecki or Unitop-Optima S.A.   By way of further response, both "PPHU" and "Unitop" are companies owned by Mr. Krzysztof Bubrowiecki and his wife, who are also owners of 100% of Defendant's shares. All companies are part of one financial group.  At all times purchases of the Defendant's SESAME SNAP products were made through "Abiamex

Tomasz Grabowski" – company owned by current Vice President of Defendant and Secretary of Supervisory Board of Unitop-Optima S.A.

37.    Defendant ADMITS in part and DENIES in part the allegations contained in Paragraph 37 of the Complaint.  Defendant also ADMITS that it sold its products in 24 packs of SESAME SNAPS brand cookies in or around 2006-2007.   By way of further response, Defendant, not K-Max, owned the referenced design.   Defendant DENIES the remainder of the allegations contained in Paragraph 37 of the Complaint.

38.    Defendant ADMITS that "in or around 2009, Tomasz Grabowski visited K-Max in Canada."   Defendant DENIES the remaining allegations contained in Paragraph 38 of the Complaint.

39.    Defendant ADMITS that it asserted and reminded K-Max of its rights in the SESAME SNAPS mark following Grabowski's trip to Canada; Defendant also ADMITS that it informed K-Max that K-Max would no longer be a distributor of Defendant.  Defendant DENIES the remaining allegations contained in Paragraph 39 of the Complaint.

40.    After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 40, and therefore, DENIES same and demands strict proof at trial.

41.    Defendant ADMITS in part and DENIES in part the allegations contained in Paragraph 41 of the Complaint.  Defendant ADMITS that PHZ Agros acquired trademark rights. By way of further response, PHZ Agros transferred the trademark rights to Agros Holding S.A., and then Agros Holding S.A. transferred the trademark rights to Defendant in 2002.  Defendant DENIES the remainder of the allegations contained in Paragraph 41 of the Complaint.

42.     Defendant ADMITS the allegations contained in Paragraph 42 of the Complaint

43.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 43, and therefore, DENIES same and demands strict proof at trial.

44.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 44, and therefore, DENIES same and demands strict proof at trial.

45.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 45, and therefore, DENIES same and demands strict proof at trial.

46.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 46, and therefore, DENIES same and demands strict proof at trial.

47.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 47, and therefore, DENIES same and demands strict proof at trial.

48.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 48, and therefore, DENIES same and demands strict proof at trial.

49.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 49, and therefore, DENIES same and demands strict proof at trial.

50.     The allegations in Paragraph 50 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

51.     Defendant ADMITS in part and DENIES in part the allegations found in Paragraph 51 of the Complaint.  Defendant, through its affiliated companies, produces, manufactures and distributes various cookies and sweets.  Defendant also buys products made by other manufacturers, and distributes and sells those products.

52.     Defendant ADMITS the allegations contained in Paragraph 52 of the Complaint.

53.     Defendant ADMITS in part and DENIES in part the allegations found in Paragraph 53 of the Complaint.  Defendant owns 100% of shares of Unitop-Optima S.A. and executes control over that company.

54.     Defendant DENIES the allegations contained in Paragraph 54 of the Complaint.

55.     The allegations in Paragraph 55 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

56.     Defendant ADMITS the allegations contained in Paragraph 56 of the Complaint.

57.     Defendant ADMITS the allegations contained in Paragraph 57 of the Complaint.

58.     Defendant DENIES the allegations contained in Paragraph 58 of the Complaint.

59.     Defendant DENIES the allegations contained in Paragraph 59 of the Complaint.

60.     The allegations in Paragraph 60 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.   By way of further response, Dailmpex never owned rights to the SESAME SNAPS marks.

61.     Defendant ADMITS that in or around September 2016 it filed a WIPO proceeding under the Uniform Domain Dispute Resolution Policy, but DENIES the remainder of the allegations contained in Paragraph 61 of the Complaint.

62.     Defendant ADMITS the allegations contained in Paragraph 62 of the Complaint.

63.     Defendant ADMITS the allegations contained in Paragraph 63 of the Complaint.

64.     The allegations in Paragraph 64 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

65.     Defendant ADMITS so much of Paragraph 65 of the Complaint which alleges that Defendant has filed trademark applications for "SESAME SNAPS" marks with the USPTO, specifically DENIES that "[a]ll of them have been denied", and DENIES each remaining allegation, if any, contained in said paragraph.   Serial No. 85331534 SESAME SNAPS DELICIOUS TRY ONE SEZME BRAND and Serial No. 85378422 Design Mark Amki SESAME SNAPS have both been registered.

66.     Defendant ADMITS in part and DENIES in part the allegations contained in Paragraph 66 of the Complaint.  The trademark examiner in the office actions for some of the

marks did place an objection based arguing that the mark was "incapable of functioning as a source-identifier for applicant's goods."

67.     Defendant ADMITS that all of its currently LIVE, US federally registered SESAME SNAPS marks include a disclaimer to the words "SESAME SNAPS."

68.     Defendant ADMITS that all of its currently LIVE, US federally registered SESAME SNAPS marks include a disclaimer to the words "SESAME SNAPS."

69.     Defendant DENIES the allegations contained in Paragraph 69 of the Complaint.

70.     Defendant DENIES the allegations contained in Paragraph 70 of the Complaint.

71.     Defendant DENIES the allegations contained in Paragraph 71 of the Complaint.

72.     Defendant DENIES the allegations contained in Paragraph 72 of the Complaint.

73.     Defendant ADMITS the allegations contained in Paragraph 73 of the Complaint.

74.     Defendant ADMITS the allegations contained in Paragraph 74 of the Complaint.

75.     Defendant ADMITS the allegations contained in Paragraph 75 of the Complaint.

76.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 76, and therefore, DENIES same and demands strict proof at trial.

77.     Defendant DENIES the allegations contained in Paragraph 77 of the Complaint, except ADMITS only so much of said paragraph which alleges that "the Canadian courts and authorities have already adjudicated on the respective rights of the parties relating to the relevant trademarks and have determined that the company which is represented by the respondent has infringed the intellectual property rights of the complainant."

78.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 78 of the Complaint, and therefore, DENIES same and demands strict proof at trial.

79.     Defendant ADMITS it obtained its Canadian trademarks and identified its goods as "confectionary products, namely, sesame bars"; the remaining allegations of Paragraph 79 are DENIED.

80.     The allegations in Paragraph 80 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

81.     Defendant DENIES the allegations contained in Paragraph 81 of the Complaint.

82.     The allegations in Paragraph 82 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

83.     The allegations in Paragraph 83 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

84.     The allegations in Paragraph 84 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

85.     The allegations in Paragraph 85 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

86.     Defendant ADMITS that a trademark assignment was filed between Defendant and Agros Holding S.A.  Defendant DENIES the remaining averments; the remaining allegations are also conclusions of law to which strict proof at trial are demanded.

87.     Defendant DENIES the allegations contained in Paragraph 87 of the Complaint.

88.     Defendant ADMITS the allegations contained in Paragraph 88 of the Complaint, except to the extent that it is implied that there is any requirement to name predecessors-in-interest in connection with Canadian or U.S. applications.  To the extent that such an allegation is implied in Paragraph 88, Defendant specifically DENIES that allegation.

**COUNT I:
CLAIM FOR DECLARATORY RELIEF**

89.     All of the answers set forth in the foregoing paragraphs 1-88 are incorporated into the following counts as though set forth at length therein.

90.     Defendant DENIES the allegations contained in Paragraph 90 of the Complaint.

91.     Defendant DENIES knowledge or information sufficient to form a belief as to the meaning/use of the phrase "sesame snaps" as utilized by Defendant in Paragraph 91 of the Complaint, and on that basis DENIES the allegations contained in said paragraph.  To the extent Plaintiff is alleging that Defendant sells and distributes its  "Sesame Snaps" through third-parties

throughout the world, who do so with Defendant's permission, Defendant ADMITS such allegation.

92.     The allegations in Paragraph 92 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

93.     Defendant DENIES the allegations contained in Paragraph 93 of the Complaint. By way of further response, it appears that Plaintiff sells sesame related products and identifies some as "Sesame Snaps."

94.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 94, and therefore, DENIES same and demands strict proof at trial.

95.     After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 94, and therefore, DENIES same and demands strict proof at trial.

96.     Defendant DENIES the allegations contained in Paragraph 96 of the Complaint. By way of further response, Plaintiff has acted in bad faith and with specific knowledge of his lack of rights and intent to harm Defendant.

97.     Defendant DENIES the allegations contained in Paragraph 97 of the Complaint. By way of further response, it appears that Plaintiff sells sesame related products and identifies some as "Sesame Snaps."

98.    In response to the allegations contained in Paragraph 98 of the Complaint, Defendant ADMITS that some of its trademark registrations were abandoned, and DENIES the remaining allegations contained in said paragraph.

99.    Defendant ADMITS the allegations contained in Paragraph 99 of the Complaint.

100.    The allegations in Paragraph 100 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant denies the allegations and demands strict proof at trial.

101.    Defendant ADMITS the allegations contained in Paragraph 101 of the Complaint.

102.    Defendant DENIES the allegations contained in Paragraph 102 of the Complaint

103.    Defendant DENIES the allegations contained in Paragraph 103 of the Complaint.

## COUNT II:
## BAD FAITH UDRP COMPLAINT: REVERSE DOMAIN NAME HIJACKING

104.    All of the answers set forth in the foregoing paragraphs 1-104 are incorporated into the following counts as though set forth at length therein.

105.    Defendant DENIES the allegations contained in Paragraph 105 of the Complaint By way of further response, upon information and belief, Plaintiff registered the Domain Names with knowledge that this would harm Defendant and with the intent to force Defendant to either buy them back or expend legal fees to recover the Domain Names.

106.    The allegations in Paragraph 106 state conclusions of law to which no answer is required.  To the extent that a response is deemed necessary, Defendant DENIES the allegations and demands strict proof at trial.

107.   Defendant DENIES the allegations contained in Paragraph 107 of the Complaint.

108.   In response to the allegations contained in Paragraph 108 of the Complaint, Defendant ADMITS that the WIPO Panel ruled in favor of Defendant and the Domain Names were ordered to be transferred to Defendant, and DENIES the remaining allegations contained in said paragraph.

109.   Defendant DENIES the allegations contained in Paragraph 109 of the Complaint.

110.   Defendant ADMITS the allegations contained in Paragraph 110 of the Complaint.

111.   Defendant DENIES the allegations contained in Paragraph 111 of the Complaint.

112.   Defendant DENIES the allegations contained in Paragraph 112 of the Complaint.

113.   After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 113, and therefore, DENIES same and demands strict proof at trial.

114.   Defendant generally DENIES each and every remaining allegation in the Complaint that has not been previously admitted, denied or answered herein.   Defendant specifically DENIES that Plaintiff is entitled to any of the requested relief against Defendants.

## **AFFIRMATIVE DEFENSES**

Further answering the Complaint, Defendant asserts the following defenses, without assuming the burden of proof when such burden would otherwise be on the Plaintiff:

## AS AND FOR A FIRST DEFENSE

115.    The Complaint, and each purported cause of action contained therein, fails to state facts sufficient to state a cause of action against Defendant.

## AS AND FOR A SECOND DEFENSE

116.    The Complaint, and each purported cause of action contained therein, in whole or in part, is barred by the doctrine of unclean hands.

## AS AND FOR A THIRD DEFENSE

117.    Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered any damage.

## AS AND FOR A FOURTH DEFENSE

118.    Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and/or acquiescence.

## AS AND FOR A FIFTH DEFENSE

119.    Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## AS AND FOR A SIXTH DEFENSE

120.    Plaintiff's claims are barred, in whole or in part, by the doctrine of *res judicata*.

## AS AND FOR A SEVENTH DEFENSE

121.    Defendants reserve the right to assert additional defenses as this action proceeds.

Wherefore, Defendant requests this Court to dismiss Plaintiff's action against it, and enter judgment that Plaintiff take nothing on its claims under the Complaint, and award Defendants their costs in defending this action, together with their reasonable attorneys' fees, and such other and further relief as this Court deems just and equitable.

<u>**AS AND FOR A FIRST COUNTERCLAIM**</u>
**COPYRIGHT INFRINGEMENT (17 U.S.C. 501)**

Counterclaim Plaintiff, Agros TRADING CONFECTIONERY SPÓŁKA AKCYJNA, hereby alleges the following against Counterclaim Defendant David Michaels:

**NATURE OF THE ACTION**

122.    This is an action arising under intellectual property. Specifically, Counterclaim Plaintiff alleges trademark infringement under the trademark laws of the United States, 15 U.S.C. §§ 1114 and 1125(a), copyright infringement under the laws of the United States, 17 U.S.C. § 501, and state law claims of trademark infringement and unfair competition, unjust enrichment and fraudulent misrepresentation.

**PARTIES**

123.    Defendant repeats and realleges paragraphs 1 through 121 with the same force and effect as if fully set forth herein at length.

124.    Upon information and belief, at all times relevant hereto Plaintiff/Counterclaim Defendant David Michaels (hereinafter "MICHAELS" or "Counterclaim Defendant") was and is

an individual with his principal place of business at 11 Vincentian Drive #1288, Niagara University, NY, 14109.

125.    At all times relevant hereto, Defendant/Counterclaimant Agros TRADING CONFECTIONERY SPÓŁKA AKCYJNA also known as Agros Trading Confectionery S.A. ("Agros" or "Counterclaimant") was and is a joint-stock company with a principal place of business at al. Jana Pawła II 27, 00-867 Warszawa, Poland

## JURISDICTION

126.    When MICHAELS sought a declaration and judgment, pursuant to 28 U.S.C. §§ 2201(a) and 2202, regarding his rights and obligations in this Court he consented to this Court's personal jurisdiction

127.    Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question, and 28 U.S.C. § 1338(a), giving this Court original and exclusive jurisdiction in a civil action arising under the trademark and copyright laws of the United States.

## STATEMENT OF THE FACTS

128.    Counterclaim Plaintiff realleges and incorporates herein all previous allegations as if set forth in full herein.

129.    Agros is a Polish corporation incorporated in 2002.

130.    Agros is engaged in the export from Poland to numerous countries around the world, including the United States of, inter alia, sesame biscuits, cookies, candies or bars

(hereinafter, "sesame treats"), which are marketed in the United States under the marks SESAME SNAPS, AMKI ORIGINAL SESAME SNAPS, and SEZME BRAND (hereinafter "Agros Products").

131.     Upon information and belief, Agros is the largest supplier of sesame cookies and related products to following countries: Germany, France, Spain, England, Belgium, Denmark, Czech Republic, Slovakia, Norway, Sweden, Italy, Switzerland, Greece, Lithuania, Latvia, Malta, Mongolia, USA, Canada, Australia, Kuwait, Saudi Arabia, Libya, Yemen, United Arab Emirates, Republic of South Africa, Ghana, Japan, South Korea, and China.

132.     On July 22, 2011, Agros filed a trademark application for AMKI ORIGINAL SESAME SNAPS & Design claiming use in commerce as early as 2011 and was granted registration of the mark (Reg. 4227082) on October 16, 2012 for "Cookies, namely, sesame snaps."

133.     On May 26, 2011, Agros filed a trademark application for SESAME SNAPS DELICIOUS-TRY ONE! SEZME BRAND & Design claiming use in commerce as early as 1994 and was granted registration of the mark (Reg. 4315517) on April 9, 2013 for "Cookies, namely, sesame bars, sesame snaps."

134.     Agros, its affiliates, distributors and predecessors in interest, have continuously sold its SESAME SNAPS brand sesame bars throughout the world since the 1960's.

135.     Upon information and belief, Przedsiebiorstwo Handlu Zagranicznego Agros ("PHZ), a predecessor in title of Agros Holding SA was incorporated in 1966.

136.     Upon information and belief, PHZ was restructured to transfer all of its right, title and interest to its product and intellectual property to Agros Holding, SA in 1989.

137.    Upon information and belief, Agros Holding SA, Counterclaim Plaintiff's immediate predecessor, was incorporated in Poland in 1989.

138.    Upon information and belief, Agros Trading Confectionery Sp.zo.o. was created on May 22, 2002.

139.    Agros Holding, SA assigned all of its right, title and interest to its products and intellectual property, including its SESAME SNAPS trademarks and its copyrights to Counterclaim Plaintiff, Agros Trading Confectionary Sp.zo.o. on June 26, 2002.

140.    On or about September 30, 2015 Agros Trading Confectionery Sp. z o.o. changed its name to Agros Trading Confectionery Spółka Akcyjna (Agros Trading Confectionery S.A.).

141.    Agros Trading Confectionery S.A. and all its predecessors in interest including PHZ and Agros Holding, SA, are hereinafter collectively referred to as the "Agros Companies."

142.    The Agros Companies began selling its Sesame Snaps brand sesame treats in Canada via National Importers Ltd. at least as early as July 6, 1971.

143.    Agros registered the SESAME SNAPS word trademark in Canada in 2008 (TMA 728,997). It also registered a SESAME SNAPS color design trademark in 2008 (TMA 728,998) and is the current owner of a SESAME SNAPS design trademark that was registered in Canada in 1987 (TMA 332,105). These registrations are based on use of the mark SESAME SNAPS in Canada since as early as January 1, 1971 in associated with sesame bars.

144.    The Agros Companies began selling its sesame bars in the United States under the brand name SESAME SNAPS at least as early as 1967.

145.    Agros created the product packaging in **Exhibit 1** in 1971, which was filed with the US copyright office on April 14, 2017 and created the product packaging in **Exhibit 2** in

2002 or 2003, which was filed with the US copyright office on April 14, 2017. (All product packaging hereinafter referred to as "Copyrighted Works"; See **Exhibit 3**, annexed hereto).

146.    Upon information and belief, at least as early as 1967, the Agros Companies began selling its SESAME SNAPS brand through its distributor / agent A.H. Walter Company.

147.    On November 5, 1971 A.H. Walter Company applied for a US trademark registration for SEZME BRAND SESAME SNAPS claiming rights to the mark as early as July 1, 1967, and on February 29, 1971 the mark was granted registration as Reg. No. 0930266 with no words in the mark disclaimed as generic or descriptive. Reg. No. 0930266 expired in 1992.

148.    Upon information and belief, the Agros Companies began selling its SESAME SNAPS brand sesame bars through its distributor BC Imports, Inc. (hereinafter "BC Imports") in the United States on or before 1985 and has continuously sold Agros Products since that time through BC Imports.

149.    Currently, the only distributor in the US authorized to sell Agros' SESAME SNAPS brand sesame bars in the US is BC Imports.

150.    Upon information and belief, the Agros Companies have always controlled the quality of the SESAME SNAPS sesame bars and AMKI ORIGINAL SESAME SNAPS and SEZME BRAND treats distributed to the US through its distributors. As no Agros distributor has ever controlled the quality of the Agros' products the continuous common law rights to the marks inure to the benefit of Counterclaim Plaintiff Agros.

151.    Further evidence of continuous use of the SESAME SNAPS brand by the Agros Companies may be found in a 1994 letter to an Agros intermediary, Adam Stafiej, from the US FDA regarding SESAME SNAPS entering the California market whereby an FDA included a statement appears to show SESAME SNAPS as a brand name: " The filing of the notice qualifies

Fortuna brand drinks and juices and Sesame Snaps for exemption from the requirement for mandatory nutrition labeling for the time period between May 8, 1994, to May 7, 1995 (copy enclosed to confirm your submission).

152.   From 1985 to present, Agros' total sales in the US through BC Imports exceeds $13,057,000 (US dollars).

153.   Sales of Agros products have been found in such famous retailers as A W Marshall, Albertson's, Amazon.com, Cost Plus Inc., Costco, Dairy Mart, Super Store Industries, Unified Grocers, Volume Snacks, Winco Foods among many others.

154.   As a result of Agros' continuous and substantial sales through BC Imports since 1985 and, upon information and belief, through A.H. Walter Company, Inc. since 1967, the SESAME SNAPS mark achieved secondary meaning in the minds of its consumers for sesame bars and become famous in the United States.

155.   In the Complaint filed by MICHAELS, Plaintiff/Counterclaim Defendant asserts that he "acquired his sesame snaps business, including all intellectual property rights, from K-Max Corp, which acquired the business from the now defunct Dalimpex Ltd." (Michaels Complaint ¶ 25).

156.    Michaels asserts in his complaint that Dalimplex Ltd. claimed rights to its SESAME SNAPS CANDY / FRIANDISE, US trademark registration (Reg. No. 2627618), as early as 1998 (Michaels' Complaint ¶ 28).

157.   US Reg. No. 2627618 of the mark SESAME SNAPS CANDY / FRIANDISE was cancelled on May 16, 2009.

158.   Michaels claims ownership of the K-Max Corp.'s trademarks as of August 16, 2012 (Michaels' Complaint ¶ 47).

159.    K-Max Corp was a licensed distributor of Agros' Sesame Snaps in Canada from 2003 to 2010.

160.    In *Agros v. K-Max* when confirming the trial court judge's ruling, the Court in its May 19, 2015 Endorsement quoted the trial court:

> "Having reviewed the affidavit of Pawel Celinski and examined sample packages of the plaintiffs 'sesame snaps' product and the product which the defendants have sold and distributed, I am satisfied that the 'Classic Sesame' candies infringe the copyrighted works and trademarks of the plaintiff."

(**Exhibit 4** , *Agros v. K-Max* May 19, 2015 Endorsement ¶ 22)

161.    Upon information and belief, K-Max Corp was never an owner of any of Agros intellectual property and if it had any ownership rights to any trademark which included the mark SESAME SNAPS after 2010, those rights were, upon information and belief, long after 1967, Agros' date of first use of the mark SESAME SNAPS in the US through its distributor A.H. Walter Company, Inc., as well as long after the date the mark SESAME SNAPS was used through its distributor BC Imports, on or before 1985.

162.    Michaels claims ownership and control over the following domain names: 1.SesameSnap.com; 2. SesameSnaps.com; 3. SesameSnaps.net; 4. SesameSnaps.org:  and 5.SesameSnaps.biz (hereinafter "Disputed Domain Names") (Michaels' Complaint ¶¶ 21-23).

163.    Michaels claims he was the registered owner of the following on December 29, 2012: SesameSnaps.net; SesameSnaps.org; and Sesamesnaps.biz (Michaels' Complaint ¶ 21).

164.    Michaels claims he was the registered owner of SesameSnap.com on January 20, 2013 (Michaels' Complaint ¶ 22).

165.    Michaels claims he was the registered owner of SesameSnaps.com on January 22, 2014 (Michaels' Complaint ¶ 23).

166.    Michaels claims to have sold sesame products (sesame sticks and sesame cookies) under the names "Classic Sesame" and "Sesame Snaps" from his webpage located at SesamSnaps.com since October 3, 2014 (Michaels' Complaint ¶ 24).

## COUNT I - COPYRIGHT INFRINGEMENT (17 U.S.C. 501)

167.    Agros realleges and incorporates herein all previous allegations as if set forth in full herein.

168.    The Copyrighted Works constitute copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 and Agros owns exclusive rights and privileges in the Copyrighted Works.

169.    The Canadian Court in *Agros v. K-Max* held in pertinent part that (see **Exhibit 4**):

    a.    the current design of the box packaging for Sesame Snaps was in use from at least 2006.
    b.    [Agros] has had a right to copyright protection from that time forward.
    c.    K-Max ceased being a distributor of Agros' product in 2010.
    d.    K-Max's Classic Sesame box design is difficult to distinguish from Agros' Sesame Snap box design.
    e.    K-Max' "continued use of the Classic Sesame box design constitutes a violation of the Plaintiffs copyright."

170.    Michaels is currently using the exact same package as K-Max's Classic Sesame box design as described by the Canadian court in *Agros v. K-Max*, in which the court found that Argos had a right to copyright protection and K-Max had infringed those rights.

171.    As Michaels claims to have obtained all of his intellectual property rights from K-Max (Michaels' Complaint ¶ 47) and continues to use the Classic Sesame box design he continues to violate Agro's copyright.

172.    Since at least 2014 Michaels has infringed the Copyrighted Works by using, publishing, displaying publically and promoting them through the sale of Michaels' product and through other means (Michaels' Complaint ¶ 24).

25

173.     Without authorization of Agros, Michaels has and continues to use the Copyrighted Works. Michaels is distributing copies of the Copyrighted Works to others by sale of products and displaying the Copyrighted Works publically.  Michaels continues to infringe the Copyrighted Works without authorization, thus causing irreparable injury. Upon information and belief, Michaels has derived substantial financial benefit from the infringement of Agros' copyrights.

174.     The foregoing acts of copyright infringement by Michaels have been willful, intentional and purposeful, in disregard and with indifference to Agros' rights.

175.     Michaels has been aware of his infringement at the very latest when the Canadian court in *Agros v. K-Max* ruled against K-Max on January 22, 2015. (see **Exhibit 5**)

176.     As a direct and proximate result of Michael's infringement of Agros' copyrights. Agros is entitled to damages as well as a disgorgement of Michaels' ill-gotten profits pursuant to 17 U.S.C. § 504(b), Agros is entitled to punitive damages due to Michaels' malicious willful infringement of the Copyrighted Works under 17 U.S.C. § 504(c)(2), especially after a previous judgment by the Canadian Superior Court of Justice.

177.     Agros is entitled to a full and accurate accounting by Michaels of all profits generated through his infringement of the Copyrighted Works.

178.     Michaels will continue his acts of infringement unless enjoined by the Court.

179.     As a result of Michael's activities Agros has been damaged and continues to be damaged in an amount to be ascertained.

180.     As a result of the infringement, Agros has suffered irreparable harm and Michaels should be preliminarily and permanently enjoined from directly or indirectly infringing Agros' rights.

**AS AND FOR A SECOND COUNTERCLAIM**
**TRADEMARK INFRINGEMENT**
**AND COUNTERFEITING (15 U.S.C. § 1114(1)(A)**

181.     Agros repeats and realleges paragraphs 122 through 177 with the same force and effect as if fully set forth herein at length.

182.     Agros is without an adequate remedy at law and has suffered irreparable harm and injury to its goodwill and reputation.

183.     As a result of Michaels' activities Agros has been damaged in an amount to be ascertained. Agros seeks an accounting of Michael's profits and Agros' actual and consequential damages resulting from Michael's infringing acts.  Agros also seeks injunctive relief pursuant to 15 U.S.C. § 1116. Agros seeks punitive, additional, and enhanced damaged from Michaels, as well as recovery of Agros' attorney's fees and costs of litigation. In addition, or in the alternative, Agros seeks recovery of the maximum amount of statutory damages as permitted by 15 U.S.C. § 1117(c), including but not limited to, $2,000,000.00 per counterfeit mark per each type of good sold, offered for sale, or distributed.

184.     Because of the previous litigation in Canada with K-Max of which Michaels was aware, the infringing use is willful, thus entitling Agros to enhanced damages.

**AS AND FOR A THIRD COUNTERCLAIM**
**UNFAIR COMPETITION, FALSE**
**DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A), TRADE DRESS DILUTION**
**(15 U.S.C. § 1125(C))**

185.     Agros repeats and realleges paragraphs 122 through 181 with the same force and effect as if fully set forth herein at length.

186.    The look and feel of the copyrighted works is non-functional, famous, and inherently distinctive or has acquired distinction within the meaning of the Lanham Act and as such also functions as trade dress.

187.    By copying the total image and overall appearance of the copyrighted works Michaels has copied and diluted Agros particular trade dress.

188.    The unauthorized goods sold, offered for sale, and distributed by Michaels and services offered by Michaels through the Disputed Domain Names are of the same general nature and type as the goods sold, offered for sale, and distributed by Agros and, as such, Michaels' use of the Asserted Trade Dress, Asserted Trademarks and Counterfeit Marks have caused confusion to the general purchasing public.

189.    By misappropriating and using the Asserted Trademarks and Disputed Domain Names, Michaels' misrepresented and falsely described to the general public the origin and source of the infringing goods and services and created a likelihood of confusion by purchaser as to both the source and sponsorship of such products and services.

190.    Michaels' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Michaels' use in interstate commerce of the Asserted Trademarks, Disputed Domain Names and Counterfeit Marks, in connection with Michaels' goods and services constitutes a false designation of origin and unfair competition.

191.    Agros is without an adequate remedy at law and has suffered irreparable harm and injury to its goodwill and reputation.

192.    As a result of Michael's activities, Agros has been damaged in an amount to be ascertained. Agros seeks an accounting of Michael's profits and Agros' actual and consequential damages resulting from Michael's infringing acts.  Agros seeks punitive, additional and

enhanced damages from Michaels, as well as recover of Agros' attorney's fees and costs of litigation. In addition, or in the alternative, Agros seeks recovery of the maximum amount of statutory damages permitted by 15 U.S.C. § 1117(c).

## AS AND FOR A FOURTH COUNTERCLAIM
### COMMON LAW TRADEMARK
### INFRINGEMENT & UNFAIR COMPETITION

193.    AGROS repeats and realleges paragraphs 122 through 189 with the same force and effect as if fully set forth herein at length.

194.    Agros owns valid trademarks, as set forth above, which are distinctive and have acquired secondary meaning.

195.    Michaels' actions, as described above, are likely to cause and have caused substantial confusion, mistake or to deceive as to the affiliation, association or connection of Michaels with Agros, or as to the origin of the goods and services distributed, offered for sale, and / or sold by Michaels and the sponsorship or approval by Agros of Michaels and his commercial activities such that Michaels' acts constitute infringement of Agros' proprietary rights in the Asserted Trademarks, Disputed Domain Names, misappropriation of Agros' goodwill in the Asserted Trademarks, and unfair competition under New York law.

196.    As a result of Michael's activities Agros has been damaged and continues to be damaged in an amount to be ascertained. The acts of infringement by Michaels have resulted in substantial unjust profits and unjust enrichment of Michaels in an amount to be ascertained. Such acts have caused great damage and harm to Agros.

### AS AND FOR A FIFTH COUNTERCLAIM
### CANCELLATION OF U.S. REGISTRATION No. 5,086,046
### (15 U.S.C. §§ 1064 and 1119)

197.    Agros repeats and realleges paragraphs 122 through 193, with the same force and effect as if fully set forth herein at length.

198.    Michaels claims ownership of U.S. Trademark Registration No. 5,086,046 (hereinafter "046 registration") for "On-line retail store services featuring sesame based food products; Computerized on-line retail store services in the field of sesame based food products,' in Class 035 with a claimed date of first use in commerce of October 3, 2014.

199.    The 046 registration should be cancelled pursuant to 15 U.S.C. § 1064 on the grounds that Argos is the senior user.

200.    Pursuant to the Lanham Act, the Court has jurisdiction to order the USPTO to make appropriate entries on the Federal Register with respect to the subject mark.

### AS AND FOR A SIXTH COUNTERCLAIM
### INJURY TO BUSINESS REPUTATION AND DILUTION IN
### VIOLATION OF N.Y. GEN. BUS. LAW §§ 349 and 350

201.    Agros repeats and realleges paragraphs 122 through 197 with the same force and effect as if fully set forth herein at length.

202.    This Count sets forth a claim for deceptive acts and business practices and false advertising in violation of New York General Business Law §§ 349 and 350.

203.    Michaels' commercial use of the SESAME SNAPS mark and Trade Dress represents a deliberate attempt to mislead consumers because defendant is causing a likelihood of confusion or of misunderstanding as to defendant's goods and services, and those of third parties, having a source in or the sponsorship, approval or certification of Agros, or as being affiliated, connected or associated with Agros, and are otherwise engaging in conduct which

creates a likelihood of confusion between Agros and Michaels' products and services, creating

misunderstandings of the source of Michaels' products and services as being Agros' products

and services.

204.    By engaging in such false and misleading advertising, Michaels has engaged in

deceptive acts and business practices in violation of New York General Business Law § 349, and

false advertising in violation of New York General Business Law § 350.

205.    By reason of Michaels above-described unlawful activities. Agros has sustained

injury, damage and loss and Michaels has been unjustly enriched. Agros has already suffered

irreparable harm, and will continue to be irreparably damaged unless this Court enjoins Michaels

from continuing its unlawful acts. Agros has no adequate remedy at law.

**AS AND FOR A SEVENTH COUNTERCLAIM**
**UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT UNDER**
**N.Y. GEN. BUS. LAW Law § 360-k AND NEW YORK COMMON LAW**

206.    Agros repeats and realleges paragraphs 122 through 202 with the same force and

effect as if fully set forth herein at length.

207.    By virtue of Agros' long and continuous use of the SESAME SNAPS mark and

Trade Dress, they have become and continues to be "truly distinctive" within the meaning of

New York General Business Law Section 360-1.

208.    Michaels has made and continues to make commercial use in commerce of the

SESAME SNAPS mark and Trade Dress in a manner that causes dilution of the distinctive

quality of such marks, and lessens the capacity of such mark to identify and distinguish

Starbucks' goods and services.

209.    Agros is entitled to an order from this Court preliminarily and permanently

enjoining Michaels, his agents, employees and others acting in concert with them, from directly

or indirectly making any further commercial use of the SESAME SNAPS Mark and Trade Dress, or any other names, marks or logos that are substantially similar thereto.

## AS AND FOR AN EIGHTH COUNTERCLAIM
### UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

210.    Agros repeats and realleges paragraphs 122 through 206 with the same force and effect as if fully set forth herein at length.

211.    Agros has widely advertised and used the SESAME SNAPS mark and Trade Dress to identify its goods and services. By virtue of such advertising and use, the SESAME SNAPS mark and Trade Dress have come to identify Agros as the source of goods and services marketed under the SESAME SNAPS mark and Trade Dress and such marks have come to represent valuable goodwill which is owned by Agros.

212.    Michaels' deliberate imitation and copying of the SESAME SNAPS mark and Trade Dress is without the permission of Agros, and Michaels' use of the SESAME SNAPS mark and Trade Dress constitutes common law trademark infringement and unfair competition and is unlawful.

213.    By reason of Michaels' above-described unlawful activities. Agros has sustained injury, damage and loss and Michaels has been unjustly enriched. Agros has already suffered irreparable harm, and will continue to be irreparably damaged unless this Court enjoins Michaels from continuing its unlawful acts. Agros has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff Agros prays for judgment and relief as follows:

A.    That Michaels takes nothing by the Complaint, and that it be dismissed in its entirety.

B.    On Agros' Counterclaims:

a. Issuance of a preliminary and permanent injunction barring Michaels, along with each officer, agent, servant, employee, shareholder and attorney of Michaels; each person acting for, by, through or under Michaels; and each person in active concert or participation with Michaels and having actual notice of this Order by personal service or otherwise from (a) using Agros' trademarks, trade dress and copyrights; (b) using any trademark and domain name that imitates or is confusingly similar to or in any way similar to Agros' trademarks, or that is likely to cause confusion, mistake, deception or public misunderstanding as to the origin of Michaels' products and their connection to Agros;

b. An order directing that Verisign transfer the domain names SesameSnap.com, SesameSnaps.com, SesameSnaps.net, SesameSnaps.org, SesameSnaps.ca and SesameSnaps.biz to the registrar and account of Argos' choice.

c. That Michaels be required to file with the Court and serve on Agros within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Michaels has complied with the injunction;

d.  That, Michaels be ordered pursuant to 15 U.S.C. § 1118, to deliver up for destruction all containers, labels, signs, prints, packages, wrappers, receptacles, advertising, promotional material or the like in his possession, custody or control of Michaels bearing a mark found to infringe Argos' trademark rights, as well as all means of making same;

e.  That, pursuant to 17 U.S.C. § 504(b), Michaels be held liable for all damages as well as disgorgement of Michaels' ill-gotten profits attributable to his infringement of the Copyrighted Works plus any punitive damages as the Court sees fit;

f.  Preliminary and permanent injunctions prohibiting further infringement of Agros' copyrights and exclusive rights under the statute, pursuant to 17 U.S.C. § 504(b);

g.  That Michaels be held liable for compensatory damages, disgorgement of profits and advantages wrongfully gained by Michaels from infringing Argos' copyrights in an amount to be determined at trial, as well as interest, costs and reasonable attorney's fees as provided by law;

h.  That to a full and accurate accounting of all profits generated through Michael's infringement of the Copyrighted Works;

C.  For special and monetary damages to the extent permitted by the law;

D.  That Agros be awarded its costs and disbursements incurred in this action; and

E.  Such other and further relief that the Court deems just and proper.

Dated: April 20, 2017

LIPSITZ GREEN SCIME CAMBRIA LLP


By: /s/ Jonathan W. Brown
      Jonathan W. Brown, Esq.
      Jeffrey F. Reina, Esq.
42 Delaware Ave., Suite 120
Buffalo, NY 14202
Tel 716 849 1333 x371, Fax 716 855 1580
jbrown@lglaw.com

Ari Goldberger, Esq.
Jason Schaeffer, Esq.
ESQwire.com. P.C.
The Domain Name Law Firm
1908 Route 70 East
Cherry Hill, NJ 08003
Tel 856.874.9651, Fax 856.874.9182
Jason@ESQwire.com

Counsel for Defendant – Counter Plaintiff
AGROS TRADING CONFECTIONERY
SPÓŁKA AKCYJNA