Brett E. Lewis, Esq.
Justin Mercer, Esq.
LEWIS & LIN, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
brett@ilawco.com
justin@ilawco.com

*Counsel for David Michaels*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

DAVID MICHAELS,

                *Plaintiff,*

   v.

AGROS TRADING CONFECTIONERY
SPÓŁKA AKCYJNA,

                *Defendant.*

---

AGROS TRADING CONFECTIONERY
SPÓŁKA AKCYJNA,

                *Counterclaimant,*

   v.

DAVID MICHAELS,

                *Counterdefendant.*

Case No: 1:16-cv-01015

## COUNTERCLAIM DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO DISMISS

                October 18, 2017

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ....................................................................................... **i**

**INTRODUCTION** .................................................................................................. **1**

**ARGUMENT** ...................................................................................................... **11**

I.   Agros' Claims Must be Dismissed for Failure to State a Cause of Action. ...................... 11

   A.  Legal Standard for Rule 12(b)(6)......................................................................... 11

   B.  Agros' Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Counterclaims Fail to Allege a Valid, Legally Protectable Trademark Because "Sesame Snaps" is Generic for Sesame Snaps and Sesame Cookies.................................................................... 12

      1.  Genericness Warrants Dismissal of All of Agros' Trademark-Related Claims......... 12

      2.  Agros' Fifth Counterclaim For Cancellation of US Registration 5,086,046 Fails..... 18

      3.  Agros' Fifth and Sixth Counterclaims Regarding New York Deceptive Acts and For Dilution Fails .................................................................................................. 18

      4.  Agros' Fourth, Seventh, and Eighth Counterclaims for Unfair Competition and Trademark Infringement Fail ............................................................................ 19

   C.  Agros' Third, Sixth, Seventh and Eighth Counterclaims Fail to Allege a Protectable Trade Dress. .......................................................................................................... 20

   **CONCLUSION** ................................................................................................ **22**

## TABLE OF AUTHORITIES

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976) ...................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ............................................................................ 11, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007) ............................................. 11, 12, 16, 20

Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993). ............................................... 2

*Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 593 (E.D.N.Y. March 6, 2017) .................. 20

*Buti v. Impressa Perosa S.R.L.*, 139 F.3d 98, 105 (2d Cir. 1998) .............................................. 14

*CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11, 13-14 (2d Cir. 1975) ........................ 15

*Cohen v. Stevanovich*, 722 F.Supp.2d 416, 423 (S.D.N.Y. 2010) .............................................. 11

*Courtenay Commc'n Corp. v. Hall*, 334 F.3d 210, 214 n.2 (2d Cir. 2003) ........................... 13, 14

*Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 574 (D.N.J. 1985) ..................... 16

*Energy Intelligence Group, Inc. v. UBS Financial Services, Inc.*, 2009 WL 1490603, at *5-6
   (E.D.N.Y. May 22, 2009) ..................................................................................... 13, 16, 17

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir.1995) ..................... 21

*Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111 (1938) .......................................................... 12

*Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ................................................ 17

*Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 373 (S.D.N.Y. 2003) ....... 21

*Murphy Door Bed Co. v. Interior Sleep Systems*, 874 F. 2d 95, 101 (2d Cir. 1989) .................... 13

*Nat'l Nonwovens, Inc. v. Consumer Prods. Enters., Inc.*, 397 F. Supp. 2d 245, 252 (D. Mass.
   2005) .................................................................................................................................. 17

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 743 (2d Cir. 1998) ................ 20

*North Forest Development, LLC v. Walden Ave Realty Assocs., LLC*, 2007 WL 2295808, at * 5
   (W.D.N.Y. Aug. 9, 2007) .................................................................................................... 13

*Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ..................................................... 19

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) ............................................................................ 12

*Reese Pub. Co., Inc. v. Hampton Intern. Communications, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980) 13,
   16

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 301 n.6
   (S.D.N.Y. 2012) ................................................................................................................... 2

*Sally Gee, Inc. v. Myra Hogan, Inc*, 699 F.2d 621, at 625, 217 USPQ 658 (2d Cir. 1983) ......... 19

*Therapy Products, Inc. v. Bissoon*, 623 F.Supp.2d 485, 493 (S.D.N.Y. 2009) ........................... 12

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289 , 297-98
   (S.D.N.Y. 2002) ................................................................................................................. 19

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ............................................. 12

*Virgin Enters, Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003 ................................................. 12

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115-16 (2d Cir. 2001) .................................... 20


**Statutes**

15 U.S.C § 1125(d) ...................................................................................................................... 1

N.Y. Gen. Bus. Law § 349(a) .................................................................................................... 19

N.Y. Gen. Bus. Law § 350 ......................................................................................................... 19

N.Y. Gen. Bus. Law § 360-l ....................................................................................................... 19

i

**Other Authorities**

McCarthy on Trademarks and Unfair Competition ............................................. 12, 15, 21

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................... passim

Plaintiff David Michaels ("Michaels" or "Plaintiff"), by his attorneys, hereby submits this Memorandum of Law in support of his Motion to Dismiss pursuant Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

At issue on Plaintiff's motion to dismiss are Defendant's counterclaims arising out of Plaintiff's use of the generic term "sesame snaps" in connection with the sale, distribution and marketing of sesame snaps in the United States.  As common sense dictates, the term "sesame snaps" is the generic name of a type of brittle cookie (or "snap") made of sesame seeds, which is made, eaten, and enjoyed around the world.  Just like "ginger snaps," "chocolate chip cookies" and "oatmeal raisin cookies" are not protectable terms for types of cookies, the phrase "sesame snaps" is not and cannot be a protectable mark.

Both Plaintiff and Defendant sell sesame snap cookies and bars. Both Plaintiff and Defendant package their sesame snap cookies and bars in ordinary, cellophane wrappers.  There are many manufacturers of sesame snap cookies in the USA, Poland, and around the world.  There are multiple brands of sesame snap goods available for purchase in the USA, Canada, the UK, Poland and elsewhere.  There are also hundreds of thousands of recipes for "sesame snaps" available in cooking books and on the Internet.

Defendant/Counterclaimant Agros Trading Confectionary Spolka Akcyjna ("Agros" or "Counterclaimant") contends that it, alone, has a monopoly over the generic term "sesame snaps" in the United States.  After Plaintiff brought a Complaint against Agros for a Declaration that Plaintiff has not violated the Anti-Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C § 1125(d) and is the rightful registrant of the Domain Names, Agros filed an Answer and Counterclaims ("Counterclaim"), asserting various claims for trademark infringement, trade dress infringement and unfair competition, among other related claims.

As established below, however, "sesame snaps" is generic for "sesame snaps" as a matter of law.  Agros has filed multiple trademark applications for "SESAME SNAPS" marks with the USPTO, starting in 2009.  All of them have been denied.  In each case, different examining attorneys have found that Defendant's applied-for mark is **generic** in connection with the identified goods ("sesame snaps") and, therefore, incapable of functioning as a source-identifier for its goods.  As such, no amount of claimed use or secondary meaning in a pleading could convert a generic mark into one capable of distinctiveness.  Thus, the trademark infringement claims must fail.

Moreover, Agros' Counterclaim utterly fails to plead any facts with any degree of specificity relating to its claimed trade dress in its ordinary product packaging.  As a result, its trade dress claim, and those causes of action that rely upon the existence of any claimed trade dress is deficient as a matter of law and should be dismissed.

Accordingly, Plaintiff respectfully requests that the Court grant his motion to dismiss the Counterclaim in its entirety.[1]

## STATEMENT OF FACTS[2]

According to the Counterclaim, dated April 20, 2017 ("Counterclaim"), Agros is a Polish company that is an export representative or a broker for Polish confectionery producers, "co-packers," who manufacture sesame snaps, cream fudge and wafers. *See* Counterclaim ¶¶ 51, 129-

---

[1] On October 18, 2017, Agros voluntarily dismissed its first cause of action for copyright infringement. [ECF No. 22].

[2] The facts set forth herein are based on the Counterclaim, documents attached to the Counterclaim as an exhibit, matters of which judicial notice may be taken, and documents either in the party's possession or of which the party had knowledge and relied on in bringing suit, all of which the Court may consider on a motion to dismiss. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *see also Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 301 n.6 (S.D.N.Y. 2012) (taking judicial notice of online trademark registration information).

130. Agros sells, *inter alia*, "sesame biscuits, cookies, candies or bars" under marks that include the words "sesame snaps". *See* Counterclaim ¶ 130.

Agros has made various attempts to obtain trademark protection for a "sesame snaps" trademark in the United States—all have failed.  On July 10, 2009, Agros filed an application for a trademark registration, US Trademark Serial No. 77778406, with the USPTO for the word mark "SESAME SNAPS" for "cookies, namely sesame bars" (the "First SESAME SNAPS Applied-For Mark"). *See* Counterclaim at ¶¶ 65, 130.  According to the prosecution history at the USPTO for the First SESAME SNAPS Applied-For Mark, Trademark Examining Attorney Tina L. Snapp issued an "Office Action" on October 15, 2009 in response to Agros' '406 application stating that the

> Registration is refused because the applied-for mark merely describes the nature of the applicant's goods. Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1); *see* TMEP §§1209.01(b), 1209.03 *et seq.* As seen from the attached evidence, the word "snaps" describes a type of cookie. Furthermore, there are a number of recipes for "sesame snaps" that are accessible on the Internet (several relevant examples found during an Internet search conducted on October 15, 2009 are attached for the applicant's review).
>
> *     *     *
>
> Please note:  In addition to being merely descriptive, **the applied-for mark appears to be generic in connection with the identified goods** and, therefore, incapable of functioning as a source-identifier for applicant's goods.

*See* Counterclaim at ¶¶ 65, 130; *see also* Mercer Decl. at ¶ 2 (emphasis added). Thereafter, Agros abandoned the application for the First SESAME SNAPS Applied-For Mark. *See id.*

Agros is the registrant of US Trademark Reg. 4227082 for a *design mark* that includes the phrase "AMKI ORIGINAL SESAME SNAPS" for "Cookies, namely, **sesame snaps**," (emphasis added) registered on October 16, 2012 (the "First SESAME SNAPS Design Mark").

*See* Counterclaim ¶ 132.  According to the Registration Certificate for the First SESAME

SNAPS Design Mark and the prosecution history at the USPTO, Trademark Examining Attorney

Jean H. Im required Agros to disclaim the wording "ORIGINAL SESAME SNAPS." *See*

Counterclaim at ¶¶ 65, 67, 68, 130, 132; *see also* Mercer Decl. at ¶ 3.

On May 26, 2011, Agros filed an application for trademark registration, US Trademark

Serial No. 85331386, with the USPTO for the design mark "SESAME SNAPS" for "Cookies,

namely sesame bars, **sesame snaps**" (emphasis added) (the "Second SESAME SNAPS Applied-

For Mark"). *See* Counterclaim at ¶¶ 65, 130.  A representation of the Second SESAME SNAPS

Applied-For Mark is as follows:



*See* Counterclaim at ¶¶ 65, 130; see also Mercer Decl. *see also* Mercer Decl. at ¶ 4. According to

the prosecution history at the USPTO for the Second SESAME SNAPS Applied-For Mark,

Trademark Examining Attorney Linda Mickleburgh issued an "Office Action" on November 14,

2012 in response to Agros' '386 application stating that the

> Registration is refused because **the applied-for mark is
> generic** and thus incapable of distinguishing applicant's
> goods.
>           *       *       *
> The examining attorney has attached evidence from the
> internet showing use of the terms in recipes for the type of
> snaps applicant sells and for articles exploring the health
> benefits of different brands of sesame snaps.
>           *       *       *
> **In the present case, the identification, and thus the
> genus, is, as listed in the goods, "sesame snaps".**
>
> **Regarding the second part of the inquiry, the attached
> evidence from** [recipes and third party usage on the

Internet] **shows that the wording "sesame snaps" in the applied-for mark means a type of sweet made from sesame seeds and other ingredients and thus this wording is essentially the apt or common name for the genus of the goods**. Accordingly, the relevant public would understand this designation to refer primarily to that genus of goods.

\*         \*         \*

However, the examining attorney believes the color and choice of font is not enough, and the mark does not rise to represent a source indicator. The Exam Guide referenced by the applicant states that the portion of the mark in question "MAY" be capable of functioning as a source indicator, not that it "SHALL" be a source indicator.

**The trademark examining attorney has established by "clear evidence" that the applied-for mark is generic**; thus the USPTO's evidentiary burden has been met.

*See* Counterclaim at ¶¶ 65, 130; *see also* Mercer Decl. at ¶ 5. On or about May 20, 2013, counsel for Agros responded to the USPTO Office Action seeking to avoid a refusal by proposing to add a disclaimer to the '386 application disclaiming the words "SESAME SNAPS." *See id.* Notwithstanding same, Trademark Examining Attorney Linda Mickleburgh issued an *another* "Office Action" on June 18, 2013 refusing to register the Second SESAME SNAPS Applied-For Mark on the basis that "sesame snaps" was generic for sesame snaps, and that the color and font choice included in the '386 application, *with the addition of the disclaimer*, were still insufficient to overcome the genericness of the words "sesame snaps." *See* Counterclaim at ¶¶ 65, 130; *see also* Mercer Decl. at ¶ 6. Thereafter, Agros abandoned the application for the Second SESAME SNAPS Applied-For Mark. *See id.*

Agros is the registrant of US Trademark Reg. 4315517 for a *design mark* that includes the phrase "SESAME SNAPS DELICIOUS TRY ONE SEZME BRAND" for "Cookies, namely, sesame bars, **sesame snaps**," (emphasis added) registered on April 9, 2013 (the "Second SESAME SNAPS Design Mark"). *See* Counterclaim ¶ 133.  According to the Registration

Certificate for the Second SESAME SNAPS Design Mark and the prosecution history at the USPTO, Trademark Examining Attorney Shaila E. Lewis (née Settles) required Agros to disclaim the wording "SESAME SNAPS" and "BRAND". *See* Counterclaim at ¶¶ 65, 67, 68, 130, 132; *See* Mercer Decl. at ¶ 7.

Specifically, an "Office Action" was issued on September 14, 2011, in response to Agros' application for the Second SESAME SNAPS Design Mark stating that they "**must disclaim the generic and descriptive wording "SESAME SNAPS" . . . apart from the mark as shown because "SESAME SNAPS" refer to the actual identified goods**," (emphasis added). *See* Counterclaim at ¶¶ 65, 130; *see also* Mercer Decl. at ¶ 7.  On or about March 19, 2012, counsel for Agros responded to the USPTO Office Action seeking to avoid a disclaimer, claiming that Agros had acquired secondary meaning in the words "sesame snaps". *See id.* Notwithstanding same, Trademark Examining Attorney Shaila E. Lewis issued an *another* "Office Action" on April 12, 2012 refusing to register the Second SESAME SNAPS Design Mark on the basis that "sesame snaps" was generic for sesame snaps, stating, in relevant part, as follows:

> **Applicant must disclaim the wording "SESAME SNAPS" and "BRAND" apart from the mark as shown because the wording "SESAME SNAPS" is generic**, and the Section 2(f) evidence submitted by applicant does not demonstrate that consumers have come to associate the word "BRAND" *exclusively* with applicant. *See* 15 U.S.C. §1056(a); TMEP §§1213, 1213.03(a).
>
> **As for the wording "SESAME SNAPS,"** the attached evidence  from **AllRecipes.com**, **Needs.com** (available  at http://www.needs.com/product/Edward_and_Sons_Brown_ Rice_Unsalted_Sesame_Snaps_35/b_Edward_Sons; retrieved  on  April  11,  2012,  at  11:11am), **Canadian Living** (available                                 at http://www.canadianliving.com/food/sesame_snaps.php; retrieved on April 11, 2012, 11:05am), and **REI** (available

at http://www.rei.com/product/808890/loucks-dark-chocolate-sesame-snaps; retrieved on April 11, 2012, at 11:09am), **demonstrates that the wording "sesame snaps" is used by consumers and food manufacturers as the common or class name for applicant's identified goods, namely, sesame bars and sesame snaps**.

\*   \*   \*

The following is the accepted format for a disclaimer:

**No claim is made to the exclusive right to use "SESAME SNAPS" and "BRAND" apart from the mark as shown.**

*See* Counterclaim at ¶¶ 65, 130, 133; *see also* Mercer Decl. at ¶ 8. Thereafter, Agros agreed to and did amend its application for the Second SESAME SNAPS Design Mark to disclaim "SESAME SNAPS." *See id.*

On October 1, 2014, Agros filed another application for trademark registration, US Trademark Serial No. 86411335, with the USPTO for the design mark "SESAME SNAPS" for "Cookies" (the "Third SESAME SNAPS Applied-For Mark"). *See* Counterclaim at ¶¶ 65, 130. A representation of the Third SESAME SNAPS Applied-For Mark is as follows:



*See* Counterclaim at ¶¶ 65, 130; *see also* Mercer Decl. *see also* Mercer Decl. at ¶ 9.

According to the prosecution history at the USPTO for the Third SESAME SNAPS

Applied-For Mark, Trademark Examining Attorney Sara N. Benjamin issued an "Office Action"

on January 21, 2015 in response to Agros' '335 application stating that the

> Registration is refused because merely describes a feature, ingredient, or characteristic of applicant's goods.
>       *   *   *
> In addition to being merely descriptive, **the applied-for mark appears to be generic in connection with the identified goods** and, therefore, incapable of functioning as a source-identifier for applicant's goods.
>       *   *   *
> Applicant proposes the mark SESAME SNAPS and design for use in connection with cookies.
>       *   *   *
> The terms in the proposed mark are defined as follows:
>
> **SESAME:** an erect annual plant (Sesamum indicum) native to tropical Asia, widely cultivated for its small flat seeds; the seed of this plant, used as food and as a source of oil
>
> **SNAP:** a thin, crisp, usually circular cookie
>
> *See* the attached dictionary definitions from The American Heritage® Dictionary of the English Language, Fifth Edition.
>
> When the words in the mark are considered in relation to the identified goods, they merely describe that the goods are a thin, crisp usually circular cookie made from the seeds of an erect annual plant (Sesamum indicum) native to tropical Asia.
>       *   *   *
> **Although the applied-for mark is stylized and includes a rectangular background, the degree of stylization in this case is not sufficiently striking, unique or distinctive** so as to create a commercial impression separate and apart from the unregistrable components of the mark. *See In re Sambado & Son Inc.*, 45 USPQ2d 1312 (TTAB 1997); *In re Bonni Keller Collections Ltd.*, 6 USPQ2d 1224 (TTAB 1987). **Moreover, most common geometric shapes, such as circles, ovals, triangles, diamonds, or stars, when**

> **used as a background for word or letter marks are not
> considered inherently distinctive**.

*See* Counterclaim at ¶¶ 65, 130; *see also* Mercer Decl. at ¶ 10.  On or about July 21, 2015,

counsel for Agros responded to the USPTO Office Action seeking to avoid a refusal by *again*

proposing to add a disclaimer to the '335 application disclaiming the words "SESAME SNAPS."

*See id.* Notwithstanding same, Trademark Examining Attorney Sara N. Benjamin issued an

*another* "Office Action" on August 18, 2015 refusing to register the Third SESAME SNAPS

Applied-For Mark on the basis that "sesame snaps" was merely descriptive and generic for

sesame snaps, and that the color and font choice included in the '335 application, *with the*

*addition of the disclaimer*, were still insufficient to overcome the genericness of the words

"sesame snaps." *See* Counterclaim at ¶¶ 65, 130; *see also* Mercer Decl. at ¶ 11.  Moreover,

Trademark Examining Attorney Sara N. Benjamin issued a final refusal for the '335 application

as a whole, finding that:

> While the mark does include the rectangular border around
> the wording, the attached third-party registrations show that
> rectangular borders are commonly used in trademarks for
> cookies.
>
> *     *     *
>
> **Accordingly, when it viewed in its entirety, the proposed
> mark is comprised of a generic term in a non-unique
> stylization that is bordered by a common geometric
> shape that is not inherently distinctive**.

*See* Mercer Decl. at ¶ 11. Thereafter, Agros abandoned the application for the Third SESAME

SNAPS Applied-For Mark. *See id.*

Notwithstanding the fact that five different examining attorneys all came to the same

conclusion that "sesame snaps" was generic, and the overwhelming evidence of genericness of

the term "sesame snaps" cited by each examining attorney at the time the USPTO refused

registration, in September 2016, Agros filed a proceeding with WIPO under the Uniform

9

Domain-Name Dispute-Resolution Policy ("UDRP") in which Agros blatantly misrepresented the facts concerning its trademark registrations. *See* Complaint at ¶ 61; Counterclaim at ¶ 61.  A single-member WIPO Panel issued a transfer decision in favor of Agros on December 5, 2016. *See* Complaint at ¶ 62; Counterclaim at ¶ 62.   Plaintiff filed this action to stop the Panel's decision from being implemented, and for the further relief stated above and otherwise in the Complaint. *See* Complaint at ¶ 63.

On April 20, 2017, Agros filed the instant Answer and Counterclaims ("Counterclaim"), asserting claims for, *inter alia*, trademark and trade dress infringement under the Lanham Act, common law trademark infringement and unfair competition under New York law, for cancellation of Plaintiff's Sesame Snaps mark (which disclaims the term "sesame snaps"), on the basis that it markets its "sesame snaps" under marks that include the words "Sesame Snaps," and that Plaintiff's Domain Names, sale of sesame snaps, and product packaging infringe upon Agros' allegedly exclusive rights in the word "Sesame Snaps" and ordinary cellophane product packaging. *See* Counterclaim at ¶¶ 122-142.

Counterclaims Two through Eight all purport to assert claims predicated on the existence of a protectable trademark in the term sesame snaps. *See* Counterclaim at ¶¶ 181-213.  Agros' Third, Sixth, Seventh and Eighth Counterclaims also purport to assert dilution and unfair competition, predicated in part upon Agros' claimed trade dress in its product packaging. *See* Counterclaim at ¶¶ 185-92, 201-13.  Agros' allegations related to trade dress amount to three, conclusory paragraphs:

> 145.  Agros created the product packaging in **Exhibit 1** in 1971, which was filed with the US copyright office on April 14, 2017 and created the product packaging in **Exhibit 2** in 2002 or 2003, which was filed with the US copyright office on April 14, 2017. (All product packaging

hereinafter referred to as "Copyrighted Works"; See **Exhibit 3**, annexed hereto).

186.   The look and feel of the copyrighted works is non-functional, famous, and inherently distinctive or has acquired distinction within the meaning of the Lanham Act and as such also functions as trade dress.

187.   By copying the total image and overall appearance of the copyrighted works Michaels has copied and diluted Agros particular trade dress.

*See* Counterclaim at ¶¶ 145, 186-87.  The images shown in Exhibits 1 and 2 of the Counterclaim, which Argos claims represents it trade dress product packaging, are identical to the representation of the Third SESAME SNAPS Applied-For Mark—which was denied as generic words surrounded by common shapes that were not inherently distinctive. *Compare* Counterclaim at Exhibit 1 and 2 *with* Mercer Decl. at ¶ 11.

## ARGUMENT

I.   **Agros' Claims Must be Dismissed for Failure to State a Cause of Action.**

A.   **Legal Standard for Rule 12(b)(6)**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Cohen v. Stevanovich*, 722 F.Supp.2d 416, 423 (S.D.N.Y. 2010).  Though the Court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")).  Nor does a claim suffice if it tenders, "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

**B.    Agros' Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Counterclaims Fail to Allege a Valid, Legally Protectable Trademark Because "Sesame Snaps" is Generic for Sesame Snaps and Sesame Cookies.**

1.    <u>Genericness Warrants Dismissal of All of Agros' Trademark-Related Claims</u>

It is axiomatic that a party may not maintain an action for trademark infringement, dilution, or cybersquatting without a valid trademark. *See Therapy Products, Inc. v. Bissoon*, 623 F.Supp. 2d 485, 493 (S.D.N.Y. 2009) (citing *Virgin Enters, Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).  In assessing distinctiveness, courts first determine whether the trademark at issue is (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976). Generic terms are not entitled to protection as trademarks under the law. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 12:1 ("a generic name of a product can never function as a trademark to indicate origin.").  It is well established that, "[f]or a seller to prove trademark significance in a term challenged as generic, it must be proven that the '*primary* significance of the term in the minds of the consuming public is not the product but the *producer.*'" MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 12:1 (quoting *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111 (1938)).

Although the initial classification of a mark is generally a question of fact, the Second Circuit has affirmed dismissal of trademark infringement claims where marks were found to be generic. *See Reese Pub. Co., Inc. v. Hampton Intern. Communications, Inc.,* 620 F.2d 7, 11 (2d Cir. 1980) (affirming dismissal on basis that phrase "Video Buyer's Guide" was generic).  Other courts in this Circuit have dismissed spurious trademark infringement claims brought on generic marks at the Rule 12(b)(6) stage. *See, e.g., Energy Intelligence Group, Inc. v. UBS Financial Services, Inc.,* 2009 WL 1490603, at *5-6 (E.D.N.Y. May 22, 2009) (granting motion to dismiss Lanham Act claim after determining "that the mark 'THE OIL DAILY' as used by Plaintiffs [to describe a publication about the oil industry] is generic, and not protectable."); *but cf. North Forest Development, LLC v. Walden Ave Realty Assocs., LLC,* 2007 WL 2295808, at * 5 (W.D.N.Y. Aug. 9, 2007) (narrowly denying motion to dismiss and directing plaintiff "to show cause why its allegation that the word "COMMONS" is a protectable trademark" and not generic, within the meaning of Rule 11(b)(2)).

Further, where a mark is *unregistered*, the party asserting rights to the mark has the burden of proving its mark is valid, and not generic, i.e. "if it would qualify for registration." *Cf. Courtenay Commc'n Corp. v. Hall,* 334 F.3d 210, 214 n.2 (2d Cir. 2003) (citing *Reese* and noting that "[w]e need not decide, however, whether the district court may take judicial notice of the English language to conclude based on the pleadings that word-only marks in near-standard fonts are generic because they are necessary to describe the product.").

As stated above, the USPTO has rejected Agros' attempts to register Sesame Snaps as a trademark **five times**, on the basis that sesame snaps is generic as the genus of the product that it refers to.  The USPTO's determination that a mark is generic is entitled to "great weight." *See Murphy Door Bed Co. v. Interior Sleep Systems,* 874 F. 2d 95, 101 (2d Cir. 1989) (reversing

13

district court decision and finding "Murphy bed" was generic, based, in part, "on the decisions of the PTO and TTAB finding genericness."); *see also Courtenay*, 334 F.3d at 210 ("[T]he decisions of the TTAB, while not binding on courts within this Circuit, are nonetheless 'to be accorded great weight.'") (citing *Buti v. Impressa Perosa S.R.L.*, 139 F.3d 98, 105 (2d Cir. 1998) (quotations omitted)).

As stated above, faced with the PTO's refusal to grant registration of its sesame snaps marks, Agros thrice abandoned trademark applications and twice disclaimed any rights to the term Sesame Snaps *as a trademark. See* Counterclaim at ¶¶ 65, 67, 68, 130, 132.  Again, notwithstanding the USPTO's refusals, and Agros' disclaimers of any exclusive rights in the term sesame snaps, Agros' Counterclaim asserts seven causes of action predicated on the fiction that it owns a United States trademark in "sesame snaps."  *See* Counterclaim at ¶¶ 122-42, 181-213.

Agros claims rights under the First SESAME SNAPS Design Mark and Second SESAME SNAPS Design Mark (each of which include an express disclaimer for the words "SESAME SNAPS") (*see* Counterclaim at ¶¶ 122-142), yet, as stated above, in the prosecution history for those marks, two <u>different</u> examining attorneys forced Agros to disclaim "sesame snaps" because the words were *generic. See id*; *see also* Mercer Decl. at Exhibits 2 and 6.  In at least four of the USPTO Office Actions, Agros' attempts to register the words "sesame snaps" were refused because the examining attorneys determined "by 'clear evidence' that the applied-for mark is generic." *See* Mercer Decl. at Exhibits 2-10.  In making their genericism determinations and refusals, those examiners cited, *inter alia*, dictionary definitions of the words "sesame" and "snap," Internet searches which included substantial numbers of recipes for "sesame snaps," and other third parties use of "sesame snaps" to describe their brands of sesame

snaps or cookies – evidence which this Court may also consider. *See* Mercer Decl. at Exhibits 1-10.

The cited evidence of genericness is compelling, and establishes widespread usage of the term sesame snaps to refer to a type or class of cookie or bar called "sesame snaps." Plaintiff respectfully submits that the USPTO's decision – reached by multiple examining attorneys after conducting extensive research into the usage of sesame snaps by the public and by third party manufacturers – that "sesame snaps" is generic for sesame snaps, should be afforded "great weight." *See Murphy Door Bed Co.*, 874 F. 2d at 101.

Agros, nonetheless, contends that its claimed "sesame snaps" mark has acquired distinctiveness through use in commerce. *See* Counterclaim at ¶¶ 122-142, 146-54, 194, 207-08; *see id* at 154 ("As a result of Agros' continuous and substantial sales through BC Imports since 1985 and, upon information and belief, through A.H. Walter Company, Inc. since 1967, the SESAME SNAPS mark achieved secondary meaning in the minds of its consumers for sesame bars and become famous in the United States."). As a matter of law, however, a generic mark cannot acquire distinctiveness. *See CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11, 13-14 (2d Cir. 1975) ("The record makes plain that 'consumer electronics' is a generic term describing electronic equipment which consumers buy for installation by themselves. It is therefore clear that if plaintiff had applied the term to such goods, he could not successfully maintain a trademark action . . . even if he were the first in the field and consumers had come to identify his products with him."). Agros can no more acquire trademark rights in a generic mark through use in commerce than one could claim trademark rights in the words "ice beer" for beer, "cola" for a type of soft drink, or "cube steak" for steaks. *See* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 12:18; *see also Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp.

15

571, 574 (D.N.J. 1985) (noting "for example, 'shredded wheat', '**ginger snaps**' or 'raisin bran' would not be a brand name merely because used in connection with the letters "TM" or "Brand.") (emphasis added).

It is simply not plausible that a generic mark could acquire secondary meaning. *See CES*, 531, F.2d at 14; *Reese*, 620 F.2d at 11; *Energy Intelligence Group*, 2009 WL 1490603, at *5-6; *see also Twombly*, 550 U.S. at 555.   This Court is not required to accept, as true, legal conclusions masquerading as facts. *Twombly*, 550 U.S. at 557. Having referenced trademark registrations whose prosecution histories foreclose any possibility that "sesame snaps" could function as a distinctive identifier of source, the Counterclaim utterly fails to allege any set of facts that would satisfy Agros' burden of proof that it owns a valid trademark. *see Energy Intelligence Group*, 2009 WL 1490603, at *5-6 (failure to allege existence of valid, non-generic trademark warrants dismissal).  Put another way, the Counterclaim pleads no facts, which could plausibly be construed as a basis for overcoming five separate genericness determinations by the USPTO, nor any response to the underlying evidence of genericness cited by the various examiners, despite Agros' burden to do so. *See id.*

Moreover, despite several bites at the apple, Agros never appealed any of the USPTO determinations to the Trademark Trial and Appeal Board ("TTAB").  Indeed, the USPTO rejected the First, Second and Third SESAME SNAPS Applied-For Marks, outright, and Agros abandoned those applications, each of which were for "SESAME SNAPS," alone – some plus design elements.  Agros' cannot plausibly now claim that it owns a valid, protectable trademark in "sesame snaps."  Simply put, Agros has not and cannot prove that its claimed mark — "Sesame Snaps" — is anything other than a direct reference to a type of cookie (made with sesame seeds), and, as such, cannot meet its burden to allege that it owns a valid, legally

protectable trademark. *See Energy Intelligence Group*, 2009 WL 1490603, at *4-6 (dismissing Lanham Act claim and New York unfair competition claims because mark at issue was generic); *see also* Mercer Decl. at ¶¶ 2-11.

Furthermore, Agros' actual alleged use of "sesame snaps" is inconsistent with a trademark use. *See* Counterclaim at ¶¶ 130-33; Exhibits 1 and 2. Exhibits 1 and 2 to the Counterclaim show generic use of the words "sesame snaps," right on the front of the packaging that Agros attaches to its pleading. *See id*; *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (attachments to pleading and those incorporated by reference may be considered on Rule 12(b)(6) motion to dismiss). As used in Agros' packaging – despite the misleading and deceptive ® symbol, "sesame snaps" merely refers to the product, not a brand.

Similarly, Agros' two trademark registrations, cited in the Counterclaims, utterly belie the fiction that "sesame snaps" functions as a brand. The First SESAME SNAPS Design Mark, AMKI ORIGINAL SESAME SNAPS, clearly identifies the brand as "AMKI" and the product as sesame snaps. The Second SESAME SNAPS Design Mark, SESAME SNAPS DELICIOUS TRY ONE SEZME BRAND, is even more blatant in its identification of "sesame snaps" as the product. The words, "delicious" and "try one" refer to the genus or type of product – sesame snaps – whereas, the brand is "SEZME." *See Nat'l Nonwovens, Inc. v. Consumer Prods. Enters., Inc.*, 397 F. Supp. 2d 245, 252 (D. Mass. 2005) (finding plaintiff's use of "wool" and "felt" as nouns in connection with their trademark WOOL FELT to be generic, and noting "[s]pecificity in naming a product, or the use of an adjective alongside a noun, does not preclude a finding that something is a generic phrase. For example, although the term 'beer' correctly identifies both 'light beer' and 'honey brown,' the existence of this general term has not prevented courts from

17

finding both specific terms to be generic.").  Agros simply cannot plausibly claim that it has used sesame snaps as a brand.

Accordingly, for the reasons above, the Court should not permit Agros to use spurious trademark claims to generic words to gain a monopoly and prevent legitimate competition in the sale of sesame snap cookies. As a result, Agros' Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Counterclaims—each of which rely upon the existence of a valid trademark in "sesame snaps"—must be dismissed.

2.   Agros' Fifth Counterclaim For Cancellation of US Registration 5,086,046 Fails

Agros has not pleaded any facts sufficient to cancel US Registration 5,086,046, since "sesame snaps" is generic and the wording "sesame snaps" is disclaimed from the registration.[3]  Agros does not allege that it has priority to any protectable design element of the mark, that the protectable design elements of the mark lack distinctiveness — despite the presumption of validity afforded to the registration, or *any* facts that would provide a basis for the registration to be canceled.  Accordingly, the Fifth Counterclaim should be dismissed.

3.   Agros' Fifth and Sixth Counterclaims Regarding New York Deceptive Acts and For Dilution Fails

Agros asserts claims under Sections 349 and 350 of the New York General Business Law ("N.Y. GBL"). N.Y. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus.

---

[3] U.S. Registration 5,086,046, as shown on the USPTO register, appears in Exhibit 11 to the Declaration of Justin Mercer, and the image is copied below:



18

Law § 349(a). N.Y. GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350. "To successfully assert a claim under [New York GBL §§ 349 and 350], a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal quotation marks omitted). Here, Agros fails to allege any consumer injury related to Michaels' alleged conduct other than run of the mill trademark infringement that courts routinely hold as insufficient under New York GBL §§ 349 and 350. *See id*. Accordingly, the Fifth Counterclaim must be dismissed.

To prevail on a claim for trademark dilution under N.Y. GBL § 360-l, not only must a party have a valid, protectable mark – which Agros does not – but the Second Circuit has made clear that "only extremely strong marks" are eligible for protection under New York's dilution statute. *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, at 625, 217 USPQ 658 (2d Cir. 1983). Agros has failed to plead any facts that the New York public even knows of it or that it has any fame in the State of New York to give rise to a likelihood of confusion in connection with its purported "sesame snaps" mark or trade dress. Accordingly, the Sixth Counterclaim must be dismissed.

4.   Agros' Fourth, Seventh, and Eighth Counterclaims for Unfair Competition and Trademark Infringement Fail

Since the standards for New York common law unfair competition and trademark infringement claims are essentially the same as under the Lanham Act, see *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289 , 297-98 (S.D.N.Y. 2002), the Court should also dismiss Agros' Fourth, Seventh, and Eighth Counterclaims—the New York common law and statutory claims—for the same reasons as above.

19

### C.     Agros' Third, Sixth, Seventh and Eighth Counterclaims Fail to Allege a Protectable Trade Dress.

In order to establish a trade dress infringement claim under the Lanham Act, "the plaintiff must prove (1) that the mark is distinctive as to the source of the good, [] (2) that there is a likelihood of confusion between its good and the defendant's [product][,] and (3) that the "unregistered trade dress is 'not functional.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115-16 (2d Cir. 2001).  "For trade dress claims based upon product packaging, the plaintiff may prove distinctiveness by showing either that the 'intrinsic nature' of the mark serves to identify a particular source (what is known as 'inherent distinctiveness') or that 'in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself' (what is known as 'acquired distinctiveness' or 'secondary meaning')." *Id.* at 115; *see also Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 593 (E.D.N.Y. March 6, 2017) (allegations of secondary meaning required for trade dress claims).  "Generic trade dress consist[ing] of the shape of a product that conforms to a well-established industry custom is not protectable." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 743 (2d Cir. 1998) (internal quotations omitted).

While Agros' Counterclaim strains to allege facts related to the purported "secondary meaning" it claims to have acquired in the generic words "sesame snaps," it asserts **no facts** supporting the existence of any secondary meaning and/or non-functional distinctiveness in its claimed trade dress in its product packaging. *See* Counterclaim at ¶¶ 122-42.  Agros' pleading deficiencies concerning its claimed trade dress are glaring, such that its Counterclaim fails to meet *Twombly's* pleading standards.  Ironically, while Agros did not exist in 1971—when it claims to have created the product packaging in Exhibit 1—Agros' allegations of trade dress are both indiscrete and nondescript.  Beyond simply pleading the elements of causes of action for

trade dress infringement and dilution, the Counterclaim fails to establish how its product packaging is inherently distinctive, what elements of is product packaging are claimed to be distinctive, or how Agros' has acquired secondary meaning in the distinctive elements of its product packaging, much less the fame required for a claim of trade dress dilution.

At best, the Exhibits to the Counterclaim show simple, nondescript packaging in transparent cellophane wrappers.  This type of ordinary packaging is both necessary and functional, as the purpose of see-through or clear packaging (especially for food products), is for the consumer to see the product.  Moreover, the USPTO refused to register Agros' application for the Third SESAME SNAPS Applied-For Mark, which is identical to its purported trade dress product packing, in part, because the blue borders, font, geometric shapes and transparent wrapper were both commonly used in trademarks for cookies and not inherently distinctive. *See* Mercer Decl. at ¶ 11 ("[Agros'] proposed mark is comprised of a generic term in a non-unique stylization that is bordered by a common geometric shape that is not inherently distinctive.").

Thus, not only is Agros' claimed trade dress not inherently distinctive, its overall claim fails as the trade dress is functional and generic as a matter of law. *See, e.g.*, *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir.1995) ("[s]ince the features of Paper House's trade dress for which it seeks protection [die cut greeting cards "packaged in clear cellophane wrapping"] can be considered 'generic,' even a showing of secondary meaning could not make that dress 'distinctive.'"); *see also Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 373 (S.D.N.Y. 2003) ("Use of a common type of functional packaging such as cellophane, however, cannot give rise to a suit for trademark or trade dress infringement or unfair competition") (*citing* McCarthy on Trademarks and Unfair Competition, § 7:63,

8:20 (4th ed. 2003) ("The use of ordinary packaging such as transparent cellophane is functional and free for all to use")).

As a result, Agros' Third, Sixth, Seventh and Eighth Counterclaims—to the extent that they rely upon the existence of a valid trade dress comprised of mostly clear cellophane packaging—must be dismissed.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully request that the Court grant the instant motion and dismiss the Counterclaim in its entirety.

DATED this 18th day of October 2017,

> Respectfully Submitted:
> LEWIS & LIN, LLC
>
> By:   */s/  Brett E. Lewis*
> Brett E. Lewis
> Justin Mercer
> 45 Main Street, Suite 608
> Brooklyn, NY 11201
> Tel: (718) 243-9323
> Fax: (718) 243-9326
> Email: brett@iLawco.com
>         justin@iLawco.com
>
> *Attorneys for David Michaels*