UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID MICHAELS,

                          Plaintiff,

v.

AGROS TRADING CONFECTIONERY
SPÓLKA AKCYJNA,

                          Defendant.
_____

AGROS TRADING CONFECTIONERY
SPÓLKA AKCYJNA,

                          Counterclaimant,

v.

DAVID MICHAELS,

                          Counterdefendant.
_____

**REPORT AND RECOMMENDATION**

16-CV-01015-LJV-JJM

        Before the court is the motion by plaintiff/counterclaim defendant David Michaels [23],[1] seeking dismissal pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) of defendant Agros' counterclaims which allege, *inter alia*, trademark and trade dress infringement.[2] The motion has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [10]. Having reviewed the parties' submissions [23, 24, 25, 26, 27, 32, 33] and heard oral argument [34], for the following reasons I recommend that the motion be granted in part and denied in part.

---

[1]    Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]    The parties have stipulated that the motion is directed at defendants' First Amended Counterclaims [27, 31].

**DISCUSSION**

At issue on this motion is Agros' claim to a common law trademark in the phrase SESAME SNAPS (used in connection with the sale of sesame bars) and the trade dress incorporating that mark (shown at [27-1]). "[A] trademark is a designation used to identify and distinguish the source of goods and services of a person or company." 1 McCarthy on Trademarks and Unfair Competition §3:1 (5th ed.). "'Trade dress' is very similar to a 'trademark' and usually consists of product packaging or product shape and design that serves the same role as a trademark: to identify and distinguish the goods of one seller." Id.

**A. Trademark Counterclaims**

"The law of trademarks identifies four categories of terms with respect to trademark protection. Arrayed in an ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded, these classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." Bernard v. Commerce Drug Co., 964 F.2d 1338, 1340 (2d Cir. 1992). "A generic term receives no trademark protection" (id.), because "the first user cannot deprive manufacturers of the product of the right to call an article by its name". Reese Publishing Co. v. Hampton International Communications, Inc., 620 F.2d 7, 10 (2d Cir. 1980).

In moving to dismiss Agros' trademark counterclaims, Michaels argues that "the term 'sesame snaps' is the generic name of a type of brittle cookie (or 'snap') made of sesame seeds, which is made, eaten, and enjoyed around the world", and that "'sesame snaps' is generic for sesame snaps as a matter of law". Michaels' Memorandum of Law [23-1], pp. 1-2 (emphasis in original). In support of that argument, Michaels asks the court to take judicial notice of the Patent and Trademark Office's rejections of Agros' trademark applications, arguing that "the Court may

take judicial notice of the undisputed matters of public record, including but not limited to documents on the USPTO's website". Request for Judicial Notice [25], p. 1.

I agree that the court, "in considering a Rule 12(b)(6) motion, is permitted to take judicial notice of [public] records". Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). However, Michaels asks the court not merely to take judicial notice of the existence of the PTO proceedings, but to assume the truth of the PTO's findings[3] in order to conclude that that "'sesame snaps' is generic for sesame snaps as a matter of law". That I may not do. "If the court takes judicial notice, it does so in order to determine *what* statements [the public records] contained . . . *not for the truth of the matters asserted*". Roth, 489 F.3d 499 at 509 (emphasis in original). *See also* Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) ("although the final determination of March 2005 . . . may be [a] public record[ ] of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion").

While Michaels argues that the PTO's "determination that a market is generic is entitled to great weight" (Michaels' Memorandum of Law [23-1], pp. 13-14), none of the cases which it cites in support of that proposition (Murphy Door Bed Co. v. Interior Sleep Systems, Inc., 874 F.2d 95 (2d Cir. 1989); Courtenay Communications Corp. v. Hall, 334 F.3d 210 (2d Cir. 2003); Buti v. Perosa, S.R.L., 139 F.3d 98, 101 (2d Cir. 1998)) granted a motion to dismiss under Rule 12(b)(6). Murphy Door Bed involved a bench trial, Buti involved summary judgment, and Courtenay *denied* dismissal under Rule 12(b)(6), reasoning that "the classification of a mark is a

---

[3] "Agros has filed multiple trademark applications for 'SESAME SNAPS' marks with the USPTO, starting in 2009. All of them have been denied. In each case, different examining attorneys have found that Defendant's applied-for mark is **generic** in connection with the identified goods ('sesame snaps') and, therefore, incapable of functioning as a source identifier for its goods." Michaels' Memorandum of Law [23-1], p. 2.

factual question . . . and that question turns on how the purchasing public views the mark". 334 F.3d 210 at 215.

"A litigant who alleges that a designation is not a valid trademark because it is perceived as a generic name of a product or service and does not introduce a survey to support this challenge may be viewed as less than serious by some judges." 2 McCarthy on Trademarks, §12:14; Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 641 (Fed. Cir. 1991) ("whether a term is entitled to trademark status turns on how the mark is understood by the purchasing public . . . . Magic Wand supplied no survey evidence of consumer understanding, no letters or testimony from consumers, and no affidavits from consumers showing generic use or understanding of TOUCHLESS").

Whether or not Michaels may ultimately demonstrate (by summary judgment or otherwise) that the phrase SESAME SNAPS is generic, he has not done so for purposes of Rule 12(b)(6).

B.   Trade Dress Counterclaims

Agros alleges that it "has used the product packaging depicted in Exhibit 1 for decades" ([27], ¶149; [27-1]), and that "[t]he look and feel of the AGROS packaging is non-functional and inherently distinctive or has acquired distinction within the meaning of the Lanham Act and as such also functions as trade dress". [27], ¶178. In moving to dismiss these claims, Michaels argues the packaging shown at [27-1] "is both necessary and functional, as the purpose of see-through or clear packaging (especially for food products), is for the consumer to see the product". Michaels' Memorandum of Law [23-1], p. 21.

I agree. "The use of ordinary packaging such as transparent cellophane is functional and free for all to use." 1 McCarthy on Trademarks §7:87. "Use of a common type of functional

packaging such as cellophane . . . cannot give rise to a suit for trademark or trade dress infringement or unfair competition." <u>Malaco Leaf, AB v. Promotion In Motion, Inc.</u>, 287 F. Supp. 2d 355, 373 (S.D.N.Y. 2003). Michaels further argues that Agros "asserts **no facts** supporting the existence of any secondary meaning and/or non-functional distinctiveness in its claimed trade dress in its product packaging". Michaels' Memorandum of Law [23-1], p. 20 (emphasis in original).

Again, I agree. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79, (2009). Since Agros fails to allege how other features of its packaging [27-1] constitute trade dress, its trade dress-related counterclaims fail to satisfy the requirements of <u>Iqbal</u>.

However, Agros requests leave to amend its counterclaims "if this Court believes that any of the claims asserted by Agros are not sufficiently pled". Agros' Brief in Opposition [32], p. 16. "As a matter of procedure, when a complaint is dismissed pursuant to Rule 12(b)(6) and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted." <u>Ricciuti v. N.Y.C. Transit Authority</u>, 941 F.2d 119, 123 (2d Cir. 1991).

## CONCLUSION

For the foregoing reasons, I recommend that Agros' trade dress-related counterclaims be dismissed with leave to replead, but that Michaels' motion to dismiss the trademark-related counterclaim be denied, without prejudice to a later motion for summary judgment. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by July 9, 2018.

Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: June 25, 2018

        /s/ Jeremiah J. McCarthy
        JEREMIAH J. MCCARTHY
        United States Magistrate Judge