UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID MICHAELS, | ) |
|     Plaintiff-Counterdefendant, | ) Case No.: 1:16-cv-01015-LJV-JJM |
| v. | ) **MEMORANDUM OF LAW IN SUPPORT** |
| | ) **OF DEFENDANT UNITOP SP. Z.O.O.'S** |
| UNITOP SP. Z.O.O., | ) **MOTION FOR DISMISSAL UNDER FRCP** |
| | ) **41(b) OR IN THE ALTERNATIVE,** |
|     Defendant-Counterclaimant. | ) **MOTION FOR SUMMARY JUDGMENT** |

Defendant/Counterclaimant Unitop SP. Z.O.O. (hereinafter "Defendant" or "Unitop") submits the following brief in support of its Motion for Dismissal, or in the Alternative for Summary Judgment in favor of Unitop and against Plaintiff David Michaels ("Plaintiff" or "Michaels"):

## I.    DISMISSAL UNDER FRCP 41(b)

Under FRCP 41 (b), Defendant seeks dismissal of Plaintiff's action based on Plaintiff's failure to prosecute the action. Despite repeated representations that he would be providing documents supporting his initial disclosures, Plaintiff failed to do so.

Defendant Unitop served its Initial Disclosure statement on January 29, 2021, and Defendant received Plaintiff's Initial Disclosure statement a few days later, on February 2, 2021. Via email correspondence, Plaintiff stated that he would be providing documents in support of his initial disclosures on August 25, 2021, and also stated that he would like to extend the current court deadlines. (Brown Decl., ¶3).

A stipulation concerning a requested continuance of the court deadlines was provided to Plaintiff on August 17, 2021. Plaintiff responded to the draft stipulation, and stated that he would

need to review the dates.  On August 24, 2021, Plaintiff requested additional time to exchange documents in support of the disclosure statements.  (Brown Decl., ¶4).

After multiple emails, the parties agreed to the document exchange on September 15, 2021.  Defendant Unitop produced its documents in support of its Initial Disclosures on that date, but Plaintiff did not.  Despite several emails, Plaintiff failed to respond and did not produce any documentation in support of his Initial Disclosure statement.  (Brown Decl., ¶5).

Given Plaintiff's failure to participate in the disclosure process, and failure to produce a single document in support of his claims, Defendant requests that the court dismiss the claims of Plaintiff Michaels, pursuant to FRCP 41(b).

In the alternative to dismissal, Defendant respectfully requests an evidentiary sanction prohibiting Plaintiff from introducing any documents or evidence not previously disclosed in the case.

Further, in the alternative, summary judgment should be entered against Plaintiff Michaels, and in favor of Defendant Unitop, for all the reasons set forth below.

## II.     SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF DEFENDANT UNITOP

In this action, Plaintiff, a Canadian citizen, seeks to overturn a UDRP Decision[1] rendered in favor of a Polish food manufacturer regarding certain "Sesame Snaps" domain names.  In bringing this action, Plaintiff attempts to re-write history in a futile and bad faith attempt to reverse the Canadian court's rulings, the Canadian Trademark Office's rulings, and the underlying UDRP Decision.  However, there are numerous procedural and substantive issues

---

[1] The WIPO Administrative Panel Decision (the "UDRP Decision") is annexed to the Brown Decl. as **Exhibit A**.

facing Plaintiff which warrant entry of summary judgment in favor of Unitop. Unitop therefore seeks summary judgment in its favor, confirming the underlying UDRP Decision, and dismissing the claims of Plaintiff Michaels.

There have been no less than two arbitrations and one federal lawsuit in Canada which have each awarded all trademark and/or domain name rights to Agros Trading Confectionery S.A. ("Agros"), the predecessor-in-interest to Defendant Unitop.[2] In both arbitrations involving "Sesame Snaps" domain names, Plaintiff Michaels was found to have no legitimate interests in the subject domain names.

The instant litigation currently pending in the Western District of New York arises out a WIPO Administrative Panel Decision involving the disputed domain names <sesamesnap.com>; <sesamesnaps.biz>; <sesamesnaps.net>; <sesamesnaps.org> and <sesamesnaps.com>. In that proceeding, the subject domain names were ordered to be transferred to Agros.

The Plaintiff is a Canadian citizen, who apparently selected this forum, in hope of overturning the UDRP Decision. Plaintiff at one time worked with K-Max Corp. (a former distributor of Agros)[3], and is the registrant of the disputed domain names at issue in this case.

At all times relevant hereto, Agros/Unitop has been engaged in exporting from Poland various sesame treats (i.e. snack bars made with sesame seeds). Agros, and then Unitop, exported the sesame treats to numerous countries throughout the world, including the United States where the treats were marketed under the marks SESAME SNAPS, AMKI ORIGINAL SESAME SNAPS, and SEZME BRAND (hereinafter the "Sesame Products"). Further, Agros,

---

[2] Agros was originally named in this action, until Unitop was substituted in place of Agros. Agros was dissolved and Unitop is the successor-in-interest to Agros. (*See* Document No. 45, filed on October 30, 2019).

[3] *See* Statement of Undisputed Material Facts in Support of Unitop's Motion for Summary Judgment ("Statement of Undisputed Facts"), paragraphs 6, 7 and 19.

its affiliates, distributors and predecessors in interest, have continuously sold its SESAME SNAPS brand sesame bars throughout the world since the 1960's. In addition to the United States, Agros/Unitop supplies its products to the following countries: Germany, France, Spain, England, Belgium, Denmark, Czech Republic, Slovakia, Norway, Sweden, Italy, Switzerland, Greece, Lithuania, Latvia, Malta, Mongolia, Canada, Australia, Kuwait, Saudi Arabia, Libya, Yemen, United Arab Emirates, Republic of South Africa, Ghana, Japan, South Korea, and China.

As set forth in more detail below, summary judgment should be entered in favor of Unitop and against Plaintiff Michaels.

### III.   FACTUAL BACKGROUND

**A. Relevant Litigation History.**

Agros, the predecessor to Unitop, has been the prevailing party in previous litigation concerning the SESAME SNAPS mark, including but not limited to:

(a) Under the Canadian internet Registration Authority Domain Name Dispute Resolution Policy, Agros was awarded that domain name and the Canadian Panel also found that Michaels had no legitimate interest in the "Sesamesnaps.ca" domain name, and that he had registered it in bad faith (See **Exhibit J**, annexed to the Brown Decl.).

(b) A judgment entered on January 26, 2015 in favor of Agros by Judge Mew of The Superior Court of Justice – Ontario, *Agros Trading Confectionery SP.Z.O.O. v. K-Max Corp.*, 2015 ONSC 3166 (FILE NO.: CV-14-499840, 2015-05-19) (**Exhibit B**, annexed to the Brown Decl.);

(c) On May 19, 2015, an Endorsement by Justice Morgan of the Superior Court of Justice – Ontario, was entered in favor of Agros and against Exclusive Candy and Novelty Distributing Limited and K-Max. (**Exhibit C**, annexed to the Brown Decl.);

(d) A World Intellectual Property Organization (WIPO) decision denying Michaels the ownership of the five domain names that include the word "Sesame Snaps" (*Agros Trading Confectionary S.A. v. Michaels*, Case No.:

4

D2016-1827 (WIPO, Nov. 20, 2016) (**Exhibit A**, annexed to the Brown Decl.).

In the Complaint filed by Plaintiff in the instant case, Michaels asserts that he "acquired his sesame snaps business, including all intellectual property rights, from K-Max Corp, which acquired the business from the now defunct Dalimpex Ltd." (Complaint ¶ 25). Michaels claims ownership of the K-Max Corp.'s trademarks as of August 16, 2012 (Complaint ¶ 47). However, Michaels has made this claim in the past.

Prior to the UDRP Decision at issue here, on or about July 11, 2014, a three person panel, under the Canadian Internet Registration Authority Domain Name Dispute Resolution Policy, issued a decision in favor of Agros and against David Michaels (the "Canadian Domain Name Decision"). (Brown Decl., **Exhibit J**). In this Canadian domain name dispute Michaels claimed that he obtained rights to the "Sesame Snaps" trademark from K-Max Corp. via an assignment. (**Exhibit J**, paragraph 31, sub-paragraph a). Among other things, the Panel in the Canadian domain name dispute found that:

(i) In 2012, when the "sesamesnaps.ca" domain name was registered by David Michaels, Agros was no longer affiliated with K-Max Corp. or with David Michaels. (**Exhibit J**, paragraphs 19-20);

(ii) The "sesamesnaps.ca" domain name was identical with Agros' trademark and was registered by David Michaels, without the permission of Agros. (**Exhibit J**, paragraph 21);

(iii) given the "long standing use and registration of the 'Sesame Snaps' trade-mark in Canada by [Agros], [David Michaels] must have had knowledge of the [SESAME

5

SNAPS] mark at the time he chose to register a domain name that is identical with the said mark." (**Exhibit J**, paragraph 48);

(iv)   that David Michaels "engages in a pattern of registering domain names to prevent rightful owners of trade-marks from registering them as domain names. Bad faith is inferred on this ground." (**Exhibit J**, paragraph 49); and

(v)   that David Michaels had "no legitimate interest" in the "sesamesnaps.ca" domain name, and that David Michaels registered the domain name in bad faith. (**Exhibit J**, paragraph 72).

Further, Agros was granted a default judgment on or about January 26, 2015 against K-Max Corp. in Canada (*See* **Exhibit B**). In that case, the Court declared that K-Max was infringing Agros' trademarks and copyrights. The K-Max Judgment ordered that the defendant "its servants, employees, agents, assigns, officers, directors, retailers [and] purchasers… are… restrained from directly or indirectly… advertising, selling or otherwise distributing sesame candies as 'Classic Sesame' and any other name and packaging which infringe the trademarks of the plaintiff."

Later, K-Max moved against the default judgment entered by Judge Mews in order to set aside or modify the judgment (*See* **Exhibit C**). When confirming the judgment in *Agros v. K-Max*, Judge Morgan in his May 19, 2015 Endorsement (in the second proceeding) quoted Judge Mews as definitive of the situation:

> "Having reviewed the affidavit of Pawel Celinski and examined sample packages of the plaintiffs [Agros] 'sesame snaps' product and the product which the defendants [K-Max, *et al.*] have sold and distributed, I am satisfied that the 'Classic Sesame' candies infringe the copyrighted works and trademarks of the plaintiff [Agros]."

Further, it is uncontested that the Endorsement, among other things:

  (i)  Upheld the judgment against K-Max (*See* the Statement of Undisputed Facts ¶ 16);

  (ii)  Found that K-Max, "[f]rom 2003 to 2010," was an "authorized distributor of [Agros'] 'Sesame Snap' product in Canada." (See the Statement of Undisputed Facts ¶ 17); and

  (iii)  Found that Agros had registered its SESAME SNAPS trademark, and its SESAME SNAPS products had been marketed in Canada for over 40 years (*See* the Statement of Undisputed Facts ¶ 18).

K-Max Corp. thus was never an owner of any of the SESAME SNAPS trademarks, and if it had any ownership rights at any point in time, those "rights" were long after Agros' date of first use in commerce. Accordingly, <u>any claim of Michaels that is based upon the alleged rights of K-Max Corp. has already been decided in favor of Agros</u>. Given the previous litigation history, Plaintiff is estopped from arguing otherwise.

  **B. The WIPO Panel Concluded that Michaels had no Legitimate Interest in the subject Domain Names.**

Although there is a complicated backstory between the parties, Plaintiff Michaels seeks to reverse the UDRP Decision on the grounds that Unitop allegedly does not have rights to the SESAME SNAPS trademark in the United States. However, as the WIPO Panel concluded, Michaels had "no relevant rights or legitimate interests in respect of the Domain Names." (The WIPO Administrative Panel Decision ("UDRP Decision") is annexed to the Brown Decl. as **Exhibit A**).

The UDRP Complaint was filed on or about September 8, 2016, and an Amended Complaint was filed on September 22, 2016.  Plaintiff Michaels filed his Response to the UDRP Amended Complaint on October 19, 2016.

The WIPO Panel found, among other things that Agros was engaged in the sale and export of "sesame biscuits or bars" that were marketed in Canada under the name "Sesame Snaps."  The WIPO Panel further found that Agros owned several SESAME SNAPS trademark registrations in Canada, upon which the UDRP action was based (i.e. see pages 2 and 4 of the WIPO Decision).

In the UDRP action, Michaels raised various claims in support of his position, including a claim that in the U.S., the United States Patent and Trademark Office (the "USPTO") had previously held that the term "Sesame Snaps" for use in relation to sesame bars are descriptive or generic, and therefore not registerable.  However, as set forth in the UDRP Decision, Agros did own two relevant U.S. registrations for AMKI ORIGINAL SESAME SNAPS and SESAME SNAPS DELICIOUS TRY ONE SEZME BRAND (*See* **Exhibit D**).

**C. Unitop has rights in the SESAME SNAPS mark.**

Unitop is the successor-in-interest to Agros, and is therefore the rightful owner of the SESAME SNAPS trademark.  Unitop's predecessors-in-interest were first to use it as a trademark, and consumers of sesame-based treats have come to identify SESAME SNAPS as a brand of high quality food products. Among other things:

(1) Agros registered the SESAME SNAPS word trademark in Canada in 2008 (TMA 728,997).  This Registration was assigned to Unitop on or around July 5, 2018.

Plaintiff Michaels attempted to expunge or attack this Registration, but his claims were denied by the Canadian Trademark Office (See **Exhibit E**).

(2) Agros registered a SESAME SNAPS design trademark in 2008 (TMA 728,998). This Registration was assigned to Unitop on or around July 5, 2018. Plaintiff Michaels attempted to expunge or attack this Registration, but his claims were denied by the Canadian Trademark Office (See **Exhibit E**).

(3) A predecessor to Agros registered a SESAME SNAPS design trademark in Canada in 1987 (TMA 332,105). This Registration was assigned to Unitop on or around July 5, 2018. Plaintiff Michaels attempted to expunge or attack this Registration, but his claims were denied by the Canadian Trademark Office (See **Exhibit E**).

(4) In the U.S., Agros registered its AMKI ORIGINAL SESAME SNAPS mark in October 16, 2012 (Reg. No. 4227082), and said registration was assigned to Unitop on or around April 25, 2018. (See **Exhibit D**).

At least as early as 1967, the Agros companies began selling its SESAME SNAPS brand treats through its authorized distributor / agent A.H. Walter Company. On November 5, 1971 A.H. Walter Company applied for a US trademark registration for SEZME BRAND SESAME SNAPS claiming rights to the mark as early as July 1, 1967, and on February 29, 1971 the mark was granted registration as Reg. No. 0930266 (this registration expired in or around 1992).

On July 22, 2011, Agros filed a trademark application in the U.S. for AMKI ORIGINAL SESAME SNAPS & Design claiming use in commerce as early as 2011 and was granted registration of the mark (Reg. 4227082) on October 16, 2012 for "Cookies, namely, sesame snaps." On May 26, 2011, AGROS filed a trademark application for SESAME SNAPS DELICIOUS-TRY ONE! SEZME BRAND & Design claiming use in commerce as early as

9

1994 and was granted registration of the mark (Reg. 4315517) on April 9, 2013 for "Cookies, namely, sesame bars, sesame snaps."

### D. Plaintiff Michaels previously acknowledged that the SESAME SNAPS mark is a protectable Trademark.

Plaintiff previously acknowledged that SESAME SNAPS functions as a trademark with associated goodwill; goodwill that Unitop, and its predecessors have developed over decades. Evidence of Plaintiff's own acknowledgement of the value of the SESAME SNAPS trademark is clear. For example, Plaintiff filed the following with the U.S. Patent and Trademark Office ("USPTO"):

(1) On or about August 16, 2012, Michaels filed a SESAME SNAPS trademark assignment in the USPTO purporting to assign "the entire interest and goodwill in the SESAME SNAPS trademark around the world" to Michaels. (See **Exhibit F** annexed to the Brown Decl.).

(2) On or about March 19, 2015, Michaels filed a SESAME SNAPS application for registration on the Principal Register. (See **Exhibit G** annexed to the Brown Decl.).

(3) On or about April 6, 2016, Michaels filed a SESAME SNAPS application for registration on the Principal Register. (See **Exhibit H** annexed to the Brown Decl.).

Additionally, on June 25, 2015, in a USPTO Office Action directed to Plaintiff's SESAME SNAPS application (Serial Number 86570617), the USPTO asserted that <u>there was a likelihood of confusion between Michaels' applied-for mark, and two registrations owned by Agros</u>, the predecessor to Unitop. (See **Exhibit I** annexed to the Brown Decl.).

As set forth in **Exhibit I**, Michaels filed an application for SESAME SNAPS which was refused registration based on the likelihood of confusion with U.S. Registration Nos. 4227082

10

and 4315517, registrations owned by Agros.  The two registrations, one for the AMKI ORIGNIAL SESAME SNAPS mark and the other for SESAME SNAPS DELICIOUS TRY ONE SEZME BRAND mark, prevented Michaels' SESAME SNAPS application from proceeding forward.  As stated by the USPTO examining attorney:

> Overall, the similarities among the marks and the goods and services are so great as to cause a likelihood of confusion.  The examining attorney must resolve any doubt regarding a likelihood of confusion in favor of the prior registrant.
>
> (**Exhibit I** annexed to the Brown Decl. [citation omitted]).

## IV.  ARGUMENT

**A.  Plaintiff's "Reverse Domain Name Hijacking" Claim Fails.**

In 1999, Congress enacted the Anticybersquatting Consumer Protection Act ("ACPA"), "to protect consumers and holders of distinctive trademarks from 'cybersquatting.'" *Webadvisor v. Bank of Am. Corp.*, 448 F. App'x 95, 97 (2d Cir. 2011); 15 U.S.C. § 1125(d). The Second Circuit has observed that "[c]ybersquatting involves the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners." *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 493 (2d Cir. 2000). The purpose of the ACPA was to "provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks." *Id.* at 495 (quoting S. Rep. No. 106-140, at 4)

Plaintiff Michael's complaint seeks to overturn the UDRP Decision based upon a theory of "reverse domain name hijacking." As described in *Barcelona.com, Incorporated v.*

11

*Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 67 U.S.P.Q.2d 1025 (4th Cir. 2003), reverse domain name hijacking occurs where a rightful trademark owner attempts to secure a domain name by making cybersquatting claims against a domain name's purported "cybersquatter" owner.  When a trademark owner overreaches in exercising rights under ACPA[4], the trademark owner "reverse hijacks" the domain name from the domain name registrant.

The ACPA provides an avenue for relief from a reverse domain name hijacking by allowing the affected domain name registrant whose domain name has been suspended, disabled, or transferred pursuant to a registry policy (such as UDRP) to sue to establish that the registration or use of the domain name by such registrant is not unlawful and to obtain injunctive relief for return of the domain name. *See* 15 U.S.C.A. § 1114(2)(D)(i)(II)(v). Thus, the ACPA provides a remedy to aggrieved domain name registrants against "overreaching trademark owners." *See Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 625 (4th Cir. 2003) (quoting S.Rep. No. 106-140, at 11). Specifically, this provision states:

> A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy [such as the UDRP] may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

15 U.S.C. § 1114(2)(D)(v).

Thus, in order for Plaintiff to succeed on his theory of "reverse domain name hijacking," he must show that he has superior and legitimate rights in the SESAME SNAPS mark, and that he did not register the subject domain names in bad faith.  Plaintiff cannot satisfy this standard.

---

[4] The Anticybersquatting Consumer Protection Act (ACPA), is found at 15 U.S.C. § 1114(2)(D)(v).

To succeed on his claim for reverse domain-name hijacking, "[the] plaintiff must establish (1) that [he] is a domain name registrant; (2) that [his] domain name was suspended, disabled, or transferred under a policy; (3) that the owner of the mark that prompted the domain name to be suspended, disabled, or transferred has notice of the action by service or otherwise; and (4) that the plaintiffs registration or use of the domain name is not unlawful under the [ACPA]." *See Alsoy v. Çiçeksepeti Internet Hizmetleri Anonim Sirketi*, 232 F. Supp. 3d 613, 621 (D. Del. 2017). When the first three elements are met, Courts determine whether a party is liable for cybersquatting by considering the following elements: "(1) whether the mark is distinctive or famous; (2) whether the domain name is identical or 'confusingly similar' to the mark; and (3) whether the domain name registrant acted with a 'bad faith intent to profit' from the mark when it registered the domain name." *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 323 (S.D.N.Y. 2015) (*quoting Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 472 (E.D.N.Y. 2009)) (internal alterations omitted).

In *Direct Niche, LLC v. Via Varejo S/A*, 898 F.3d 1144 (2018), the Eleventh Circuit affirmed the district court's grant of summary judgment for Defendant Via Varejo in an action brought by Direct Niche under ACPA, seeking to obtain a declaratory judgment that its registration and use of the domain name casasbahia.com was not unlawful. At issue, was whether Defendant Via Varejo owned the "Casas Bahia" service mark in the United States. However, the court held that Via Varejo demonstrated sufficient public use in commerce to support the ownership of the mark. Here, the ownership of the SESAME SNAPS mark by Unitop is more than sufficient and is supported by both Canadian and U.S trademark registrations (*See* **Exhibits D and E**).

Further, in the instant case, Plaintiff cannot succeed on his claims for reverse domain hijacking because Plaintiff's registration and use of the domain name was in bad faith. Among

13

other things, Unitop has submitted evidence that the SESAME SNAPS mark is a protectable trademark and has been registered with both the Canadian Trademark Office and the U.S. Patent and Trademark Office (*See* **Exhibits D and E**; see also Request for Judicial Notice). It is well established that registered trademark is presumed to be distinctive. *See, i.e., Alpha Recyclying, Inc. v. Crosby*, 2016 WL 1178774, at 3 (S.D.N.Y. 2016)). Further, the domains registered by Plaintiff (i.e. "sesamesnaps.com") is confusingly similar to the trademarks owned by Unitop. Indeed, beyond the findings in the UDRP Decision, the previous litigation in Canada, and the proceedings before both the Canadian and U.S. Trademark Offices clearly support this conclusion.

Perhaps more importantly, it is apparent that Plaintiff acted with a "bad faith intent to profit" from the mark when he registered the domain names at issue. Given his prior relationship with K-Max, Plaintiff knew that attempting to use or register the "Sesame Snaps" domain names was confusingly similar to the marks used and owned by Agros (the predecessor to Unitop). "A 'bad faith intent to profit' is a term of art in the [ACPA] and cannot be equated with 'bad faith' in other contexts (such as trademark infringement)." *Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 382 (S.D.N.Y. 2015) (*citing Sporty's Farm*, 202 F.3d at 499 n. 13); *accord NYP Holdings v. New York Post Publ'g, Inc.*, 63 F. Supp. 3d 328, 339 (S.D.N.Y. 2014). "A plaintiff must show that the defendant's use of the domain name is an attempt to profit specifically from 'squatting' on the domain name with bad faith, rather than simply [ ] another aspect of the alleged trademark infringement." *Flat Rate Movers*, 104 F. Supp. 3d at 382; *see also Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 437 (S.D.N.Y. 2013) ("The requirement of bad faith intent to profit imposes an important limit that cabins the statute's scope and ensures that the ACPA targets only the specific evils that Congress sought to prevent.")

Based upon the foregoing, Plaintiff cannot demonstrate that he is entitled to declaratory relief under 15 U.S.C. § 1114(2)(D)(v) and summary judgment should be entered in favor of Unitop.

**B. Plaintiff is Estopped from Claiming that Defendant does not have legitimate rights in the SESAME SNAPS mark.**

Under the doctrine of collateral estoppel, or issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414-15 (1980) [citation omitted]. The United States Supreme Court has found "the determination of a question directly involved in one action is conclusive as to that question in a second suit." *Cromwell v. County of Sac*, 94 U. S. 351, 354, 24 L. Ed. 195 (1877). "Once a court has decided an issue, it is 'forever settled as between the parties," thereby "protect[ing]" against "the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent verdicts." *B&B Hardware, Inc. v. Hargis Indus.,* 575 U.S. 138, 147, 135 S. Ct. 1293, 1302-03 (2015) [citation omitted]. Put simply, "a losing litigant deserves no rematch after a defeat fairly suffered." *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U. S. 104, 107, 111 S. Ct. 2166 (1991).

The prior litigation involving the ownership of the SESAME SNAPS marks cannot and should not be litigated once again. The previous decision and findings in the *Agros v. K-Max Corp* case are binding. (See **Exhibits B and C**). Plaintiff's attempts to invalidate Unitop's SESAME SNAPS registration in Canada are also binding. Plaintiff's most recent attempt to

15

attack Unitop's SESAME SNAPS registrations in Canada were denied on or around April 21, 2021 (See **Exhibit E**).

Further, Plaintiff is estopped from arguing that the term SESAME SNAPS is generic and not a trademark because Plaintiff previously applied for the registration of SESAME SNAPS as a trademark and, in fact, Plaintiff is currently the owner of a registration for the SESAME SNAPS mark, albeit with the term SESAME SNAPS disclaimed.  *See Plus Products v. Natural Organics, Inc.* 223 U.S.P.Q. 27, 1984 WL 33 (S.D.N.Y. 1984) (court found that defendant in litigation cannot make a fair use defense by arguing that a mark is merely descriptive because it previously sought to register the term as a trademark*).  See also Feathercombs, Inc. v. Solo Products Corp.*, 306 F.2d 251 (2d Cir), *cert. denied*, 371 U.S. 910 (1962).  In *Feathercombs*, the Second Circuit reasoned:

> The [defendant] had intended to use the term 'Featherlight' in a trademark sense is further suggested by its application in1958 for registration in the principal register.  If a competitor of a trade-mark owner seeks registration of the mark that would be conclusive evidence of his intent to make a trade-mark use thereof.  For these reasons [defendant] cannot now justify its trademark use by contending that the term is merely descriptive.  Consequently, [defendant] has no valid defense to the claim for trademark infringement.

*Feathercombs,* 306 F.2d at 356 (Emphasis added).  Here, Plaintiff attempts to go one step further by arguing that the mark is not only descriptive, but also generic.  Like the defendant in *Feathercombs*, Plaintiff is precluded from advancing such contention.

Further, Plaintiff is estopped from arguing the mark is generic based on the prosecution of his trademark applications.  In this case, the USPTO file history indicates that Plaintiff represented and asserted that SESAME SNAPS was a protectable trademark.  Specifically, in the declaration section of the SESAME SNAPS applications filed by Plaintiff, Plaintiff stated, under penalty of perjury that:

16

> [Michaels] believes that… the applicant [Michaels] <u>is the owner of the trademark/service mark sought to be registered</u>… The signatory [Michaels] believes to the best of signatory's knowledge and belief, <u>no other persons</u>… <u>have the right to use the [SESAME SNAPS] mark in commerce.</u>

(See **Exhibits G and H** annexed to the Brown Decl. [emphasis added]). Accordingly, these statements by Plaintiff, under penalty of perjury, completely undermine any suggestion that the SESAME SNAPS mark is descriptive or generic in nature.

It is also disingenuous for Plaintiff to argue that SESAME SNAPS is generic when he also filed with the USPTO a "Trademark Assignment Agreement" between himself and K-Max Corp., purporting to assign rights to the SESAME SNAPS mark (See **Exhibit F** annexed to the Brown Decl.). <u>Therefore, Michaels is very much aware that SESAME SNAPS functions as a trademark, as he sought to pursue any purported rights of K-Max before the USPTO.</u> However, as annexed as **Exhibits B and C** to the Brown Decl., Agros engaged in litigation with K-Max, a previous distributor of Agros. In said litigation, K-Max was found to infringe the SESAME SNAPS trademark and copyrights of Agros.

Given the above, Michaels should be estopped from claiming that the SESAME SNAPS mark is generic given his previous sworn statements before the USPTO and his previous actions that clearly indicate that he himself used SESAME SNAPS as a brand, and not a descriptive or generic term.

### V.     CONCLUSION

For all of the reasons contained herein, Plaintiff's complaint should be dismissed, or in the alternative, summary judgment should be entered in favor of Defendant Unitop and against Plaintiff Michaels.

Dated: February 28, 2022

                                                                        LIPSITZ GREEN SCIME CAMBRIA LLP

By:   /s/Jonathan W. Brown
       Jonathan W. Brown, Esq.
       Jeffrey F. Reina, Esq.
42 Delaware Ave., Suite 120
Buffalo, NY 14202
Tel.: (716) 849-1333 x371
Fax: (716) 855-1580
jbrown@lglaw.com

*Counsel for Defendant/Counterclaimant Unitop SP. Z.O.O.*

TO:    David Michaels
        *Pro Se Plaintiff*
        17 Phelps Drive
        Brampton, Ontario
        Canada, L6X 3V8
        (740) 844-3234
        Fax (647) 749-0546
        david@davidmichaels.org