David Michaels
11 Vincentian Drive #1288
Niagara University NY 14109
Tel: (716) 579-7021
M: (416) 239-1361
david@davidmichaels.org

*Pro Se/*
*Counterclaim Defendant David Michaels*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID MICHAELS,<br><br>    *Plaintiff*,<br><br>v.<br><br>UNITOP SP. Z.O.O.,<br><br>    *Defendant*. | Case No: 1:16-cv-01015-LJV-JJM<br><br><br>**PLAINTIFF'S / COUNTERDEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| UNITOP SP. Z.O.O.,<br><br>    *Counterclaimant*,<br><br>v.<br><br>DAVID MICHAELS,<br><br>    *Counterdefendant*. | |

1

Michaels submits the following supplemental brief in opposition to Unitop's Motion for Dismissal and for Summary Judgment in light of decisions issued since filing his response memorandum.

In one of the last opinions announced this Supreme Court term, *Abitron Austria GmbH v. Hetronic International Inc.*, 600 US ____, the Supreme Court held that the Lanham Act does not reach trademark infringement that occurs outside of the United States (US). Involving a dispute between two former business partners, both doing business in more than one country with the same trademarks, the Court reversed the Tenth Circuit and remanded the case for a determination of whether the accused acts satisfied the "use in commerce" requirement.

In *Yegiazaryan v. Smagin*, a RICO extraterritoriality opinion decided just one week before *Abitron,* the US Supreme Court has resurrected a long-disused canon of statutory construction: The presumption against extraterritorial application of US statutes., Justice Sotomayor reminded us that "[d]ual rationales support the presumption . . . . On the one hand, it reflects concerns of international comity insofar as it 'serves to protect against unintended clashes between our laws and those of other nations which could result in international discord.' On the other hand, the presumption is informed by 'the commonsense notion that Congress generally legislates with domestic concerns in mind.' In fact, consistent application of the presumption 'preserv[es] a stable background against which Congress can legislate with predictable effects.'"

## UNITOP MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

**Supplemental Issues:**

1. Does Unitop have trademark rights in "SESAME SNAPS" that are subject to protection in the United States?

2. Did Unitop have valid and legally protectable trademark rights in "sesame snaps" under the Lanham Act, 15 U.S.C. § 1114 or 1125(a) when sesamesnap.com was registered in 2005 or when sesamesnaps.com was last registered in 2009?

3. Does Unitop's Canadian trademark registration for "SESAME SNAPS" make it a distinctive mark under the Lanham Act?

4. Do any of Unitop's trademark rights invalidate Michaels' US trademark registration in SESAME SNAPS & Design?

5. Was Michaels entitled to the registration, ownership, and use of the Domain Names in the United States?

6. Was Michaels registration and use of the Domain Names lawful under the laws of the United States?

7. Did Michaels infringe on any trade or service mark right Unitop claims in the United States?

### Supplemental Submissions

In [Abitron Austria GmbH v. Hetronic Int'l. Inc., No 21-1043, 2023 WL 4239255, at *9 (U.S. June 29, 2023)](#) ("Hetronic"), the U.S. Supreme Court held that

§1114(1)(A) and §1125(a)(1) ("Infringement Provisions") of the Lanham Act "are not extraterritorial[.]"1 A claim based on conduct that "occurred in a foreign country . . . involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." Id. at *7. Consequently, foreign conduct cannot be introduced at trial to establish a Lanham Act claim under the Infringement Provisions. Id. at *6-9.

Unitop seeks to use an Ontario order obtained by default against a third party on Michaels in their motion for summary judgment and makes an argument about international comity. Ontario court trademark injunction orders, however, are only enforceable in Ontario. Only trademark injunctions issued by the Federal Court of Canada are enforceable across Canada. Trade Mark Litigation in Canada: Overview

https://uk.practicallaw.thomsonreuters.com/w-010-8439

Seeking to use an Ontario trademark injunction as an end run around the Lanham Act is wrong. This approach threatens "'international discord.'" *Ki-obel*, 569 U.S., at 115. In nearly all countries, including the United States, trademark law is territorial-*i.e.*, "a trademark is recognized as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark." 5 McCarthy §29:1, at 29-4 to 29-5. Thus, each country is empowered to grant trademark rights and police infringement within its borders. See, *e.g.*, *ibid.*; *In-genohl v. Olsen &Co.*, 273 U.S. 541, 544 (1927); *A. Bourjois &Co. v. Katzel*, 260 U.S. 689, 692 (1923).

*Austria v Hetronic Int'l*, 600 US ___ *15-16 [, June 29, 2023, No. 21-1043]

Unitop, in relying on the Ontario court's endorsement, repeats its misrepresentation that Defendant is the party with superior rights to SESAME SNAPS as a brand with its claim that its sesame snaps products had been marketed in Canada for over 40 years. The goods claimed in its now canceled AMKI ORIGINAL SESAME SNAPS trademark registration, registered in 2012, are "Cookies, namely, sesame snaps." Similarly, the goods claimed in its 2013 SESAME SNAPS DELICIOUS TRY ONE SEZME BRAND registration are "Cookies, namely, sesame bars, sesame snaps." Selling products under their generic name is the definition of a generic mark. That's why the USPTO trademarks examiner required a disclaimer to the exclusive right to use "SESAME SNAPS" in both of those US registrations.

Length of time of use of a generic mark never makes that mark distinctive in the United States. Especially significant here, the law forbids trademarking generic terms, even when a putative mark holder engages in successful efforts to establish consumer recognition of an otherwise generic term. *Id.* at 193-94. "[N]o matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Therefore, even advertising, repeated use, and consumer association will not warrant affording trademark protection to a generic term. *See Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 821 (4th Cir. 2001) ("[T]he repeated use of ordinary words ... cannot give [a single company] a proprietary right over those words, even if an association develops between the words and [that company]."). In sum, courts have long sought to foreclose companies from monopolizing common terms, holding that no single competitor has

the right to "corner the market" on ordinary words and phrases. *See Booking.com B.V.*, 915 F.3d at 193. Snyder's Lance, Inc. v Frito-Lay N. Am., Inc., 542 F Supp 3d 371, 381 [WDNC 2021]

> The Second Circuit canvassed the various types of marks, stating:
>
> A generic mark is a common name, such as automobile or aspirin, that identifies a kind of product. *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993). A mark that consists of a generic identifier of the product receives no protection from the law of trademark, even if the mark has acquired public recognition as identifying the source of the product. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Neither prior use, nor public recognition as a source identifier can justify denying others the right to refer to their product as what it is.
>
> One rung above the unprotectable generic marks are descriptive marks. These are marks that "tell[ ] something about a product, its qualities, ingredients or characteristics." *Gruner*, 991 F.2d at 1076. Descriptive marks are presumptively unprotectable, but can acquire a degree of protection if they have acquired secondary meaning, *i.e.* an acquired public recognition as a mark identifying the source. *Id.*

RiseandShine Corp. v Pepsico, Inc., 41 F4th 112, 120-21 [2d Cir 2022]

Unitop's 2009 Canadian trademark registration for SESAME SNAPS is not a means for an end run around the Lanham Act, even if it was distinctive. There's no proof that it's famous in the United States or even when Unitop started using it in the United States.

To succeed in its motion for summary judgment, Unitop needs to both invalidate Michaels' US trademark registration and prove that the Domain Names were registered when Unitop owned either (I) a mark that is distinctive at the time of registration of Michaels' domain names that are identical or confusingly similar to that mark; or (II) in the case of a famous mark that is famous at the time of registration of the first registered domain name, and that the domain names are identical or confusingly similar to or dilutive of that mark.

To establish a trademark infringement under the Lanham Act for either a registered mark under 15 U.S.C. § 1114, or an unregistered mark under 15 U.S.C. § 1125(a), Unitop must demonstrate that (1) it has a valid and legally protectable mark in the United States; (2) it owns the mark in the United States; and (3) Michaels' use of the mark to identify his services causes a likelihood of confusion.

While Michaels' action is for relief under the ACPA and damages for misrepresentations, Unitop mistakenly argues that Michaels needs to prove superior rights in the term "sesame snaps" under the ACPA. Since Michaels' USPTO registration also expressly disclaims exclusive rights in the term "sesame snaps," apart from his trademark as a whole, Michaels position is that neither party has any exclusive rights in the term "sesame snaps" and that anyone is free to use it in commerce or otherwise, under the Lanham Act.

While Unitop argues that the Plaintiff must establish the fourth element in his claim for reverse domain-name hijacking under § 1114(2)(D)(v), by proving either that (1) he did not register, traffic, or use a domain name that is identical or confusingly similar to a distinctive mark, or (2) that he did not have a bad faith intent to profit from that mark, Unitop has failed to establish that it has a distinctive mark in "sesame snaps" under the Lanham Act.

### Canadian Trademarks Are Not Protected under the Lanham Act

Despite a partially harmonized international intellectual property system, IP laws are fundamentally territorial. Not only are IP laws creatures of domestic law, but these domestic laws also generally do not reach outside of a nation's borders. This first principle not only prioritizes sovereign determination of national-level policies undergirding the regulation of IP-protected goods and services, but also recognizes the risks associated with interference in other nations' norm-setting prerogatives. As legal scholars such as Graeme Dinwoodie, Trademarks and Territory: Detaching Trademark Law from the Nation-State, and Srividhya Ragavan have explored in the trademark context, this territoriality principle is continually challenged when trademark goodwill crosses borders. But the principle is nonetheless the clear starting point for analysis.

> Because of the territorial nature of trademarks, the "probability of incompatibility with the applicable laws of other counties is so obvious that if Congress intended such foreign application 'it would have addressed the subject of conflicts with foreign laws and procedures.'" *Morrison*, 561 U.S., at 269. The use of a mark-even confined to one country-will often have effects that radiate to any number of countries. And when determining exactly what form of abstract consumer confusion is sufficient in a given case, the Judiciary would be thrust into the unappetizing task of "navigating foreign policy disputes belong[ing] to the political branches." *Jesner v. Arab Bank, PLC*, 584 U.S.___, ___(2018) (GORSUCH, J., concurring in part and concurring in judgment) (slip op., at 1). If enough countries took this approach, the trademark system would collapse.
>
> This tension has not been lost on other sovereign nations. The European Commission gravely warns this Court against applying the Lanham Act "to *acts of infringement* occurring . . . in the European Union" and outside of the United States. Brief for European Commission on Behalf of the European Union as *Amicus Curiae* 4 (emphasis added). To "police allegations of infringement occurring in Germany," it continues, would be an "unseemly" act of "meddling in

extraterritorial affairs," given "international treaty obligations that equally bind the United States." *Id.*, at 28. As the Commission and other foreign *amici* recognize, the "system only works if all participating states respect their obligations, including the limits on their power." *Id.*, at 29; see also, *e.g.*, Brief for German Law Professors as *Amici Curiae* 12; Brief for Guido Westkamp as *Amicus Curiae* 2-3. It thus bears repeating our longstanding admonition that "United States law governs domestically but does not rule the world." *Microsoft Corp.*, 550 U.S., at 454.

[Austria v Hetronic Int'l, 600 US \_\_\_\_, \*16-17](#) [, June 29, 2023, No. 21-1043]

For the foregoing reasons, Michaels asks the court to deny Unitop's motion for summary judgment.

Respectfully submitted

July 20, 2023

                                                  DAVID MICHAELS


                                                  By: s/ David Michaels
                                                  Pro Se

                                                  17 Phelps Drive
                                                  Brampton ON L6X 3V8 Canada
                                                  416-239-1361
                                                  david@davidmichaels.org