## AMICUS BRIEF ON THE ISSUE OF SUBJECT MATTER JURISDICTION
### Gerald M. Levine, Esq.

The Court in its Request For Additional Briefing invited the parties, "if so inclined, [to] argue in writing why this tentative conclusion [that this Court lacks subject matter jurisdiction to grant the requested relief] is erroneous." The Brief writer (who is not one of the parties but offers itself as a friend of the Court) believes the Court's "tentative conclusion" steps into error.

In arriving at its tentative conclusion the Court takes into account two very recent US Supreme Court decisions addressing the issue of extraterritoriality of US law. The Court would apply the holdings in *Yegiazaryan v. Smagin*, 599 U.S.___, 143 S. Ct. 1900 (2023) and *Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S.___, 2023 WL 4239255 (2023)) to claims by US based registrants challenging awards depriving them of their domain name registrations, a right granted them under the Anticybersquatting Consumer Protection Act (ACPA) (which includes amendments to Sections 1114 and 1117 of the Lanham Act).

However, in contrast to the circumstances in issue in *Yegiazaryan* and *Abitron Austria,* challenges to awards depriving registrants of their registrations do not involve extraterritorial application of US law. Rather, Congress crafted the ACPA to permit challenges to awards under Sec.1114(2)(D)(ii)(II), (iv) and (v) from the only other mechanism available to adjudicate claims of cybersquatting, namely the Uniform Domain Name Dispute Resolution Policy (UDRP). Hence the reference in subclause (II) of clause (ii) to registrars executing awards depriving domain name registrants of their registrations "in the implementation of a reasonable policy [which means the UDRP]."

The UDRP is a supranational mechanism crafted by the Internet Corporation for Assigned Names and Numbers (ICANN) based on recommendations from the World Intellectual

Property Organization (WIPO) to suppress cybersquatting. It may be asked, What does WIPO, ICANN, and the UDRP have to do with the ACPA? It is because registrars in accordance with "the reasonable policy" (D)(ii)(II) upon receiving a UDRP award rendered by an appointed Panel will execute the award unless pursuant to UDRP 4(k) the domain name registrant challenges the award by commencing a civil action in a court of competent jurisdiction, which in the US will be a district court under the ACPA.

US based registrants which includes registrants whose domain names are registered with US registrars may commence a civil action in a US district court where they have venue under the mark owner's stipulation of "Mutual Jurisdiction." Mutual jurisdiction is defined in the UDRP as being either the location of the registrar or the registrants business address. (In the event the mark owner is the non-prevailing it has a comparable venue selection to which the registrant has submitted in accordance with the terms of the registration agreement).

To understand the interrelation between the UDRP and the ACPA and why Congress crafted the ACPA as it has, it is necessary to take a step back to 1997-1999 before the implementation of the UDRP and the enactment of the ACPA.

The World Wide Web was officially launched in 1993 and the first "cybersquatting" cases began reaching district court dockets in the mid-1990s. The number of domain names multiplied significantly between 1985 and 1993 (even though there was no official Internet) and continued mushrooming through the 1990s creating a crisis for trademark owners world wide not only the US.

The US Government in 1997 requested WIPO to study the issue and in the same years Congress began crafting the statutory mechanism which evolved into the ACPA. In early 1999,

WIPO published its recommendations and ICANN transformed them into the UDRP. The ACPA is a double-barreled law. That part of the law codified in Section 1125(d) of the Lanham Act provides subject matter jurisdiction to US trademark owners suing on claims of cybersquatting, while Section 1114(2)(D) (iv) and (v) are crafted to remedy overreaching of trademark owners. Section 1117(a) provides a monetary remedy of statutory damages and possible attorney's fees to the prevailing party. "[T]he plaintiff [whether the trademark owner under 1125(d) or the domain name registrant under 1114(2)(D) (iv) or (iv)] shall be entitled (quoting from Sec. 1117(a)) "subject to the provisions of sections 1111 and 1114 of this tittle, and subject to the principles of equity, to recover [. . .] damages.  [. . .] [which can include statutory damages under 1117(d)]." The reference to Sec. 1111 is to trademarks certified by the USPTO and mark owners suing under Sec. 1125(d) while reference to Sec. 1114 is to domain name registrants for their separate remedy under 1114(2)(D)(iv) or (v). In this case, Michaels asserts a claim under clause (iv).

The Court's tentative conclusion reads Sec. 1114(2)(D) (i) (II)  and (ii)(II) as a remedy only if the defendant mark owner is certified in the US:  "[Since this case] involved Canadian trademarks, I tentatively conclude that Michaels' claims do not 'arise under' federal law." For the reasons explored below the definition of "mark" in clause (ii) and subclause (II) is to be read with respect to the Act's intended scope. "Mark" is not limited to US marks. If it were, US based registrants would be ousted of a remedy against owners of marks issued by other national registries.

The House of Representatives Report 106-412 (October 25, 1999)  summarizing the nascent ACPA explains the need for a statutory mechanism. It held a hearing on Wednesday, July 28, 1999, on Internet Domain Names and Intellectual Property Rights. Among the witnesses

was Francis Gurry, Assistant Director General & Legal Counsel (later before he retired the Director General of WIPO). On the issue of challenging UDRP awards, the House Report states:

> The legal recourse provided for in this legislation, combined with the *intellectual property alternative dispute resolution procedures being adopted by the domain name registrars* [that is, the UDRP] will give trademark owners important tools to protect their intellectual property. This is a measured and balanced response to a growing problem, and will clarify that trademark property rights are respected as the Internet continues to grow. (Emphasis added.)

The Report makes specific reference to Sec. 1114(2)(D)(ii)(II) in addressing the issue of "reverse domain name hijacking":

> A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) *may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this Act*.
>  (Emphasis added)

In a corresponding Senate Report, the Committee of the Judiciary (106-140, pg 11) stated: "The amended bill goes further, however, in order to protect the rights of domain name registrants   against overreaching trademark owners" the legislation includes remedial provisions. Under these provisions, no US based registrant is disenfranchised or disqualified from challenging a UDRP award regardless of the national source of the trademark.

How the two mechanisms interact is discussed in *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 381 (2d Cir. 2003).  Defendant in *Storey* had moved to dismiss Plaintiff-registrant's action. In denying defendant's motion the Court specified precisely how the ACPA was intended to apply:

> UDRP Paragraph 4(k) provides for "independent resolution" of the parties' dispute in the courts [. . . ]. Unlike traditional binding arbitration proceedings, UDRP proceedings are structured specifically to permit the domain-name registrant two bites at the apple. The UDRP administrative proceedings are "mandatory," but only in the sense that all registrants are obliged by virtue of the agreement to recognize the validity of a proceeding initiated by a third-party claimant. UDRP proceedings, however, need not be the exclusive remedy: an

administrative proceeding does not preclude the registrant from vindicating his rights under the ACPA or trademark law in court.

In turning to cases decided in federal courts under the ACPA involving mark owner defendants whose marks are from non-US jurisdictions will be seen that it makes no difference which national registry has issued the trade and service marks. In the cases cited below, defendants' trade or service marks are issued in Australia, Canada, Mexico, France, Spain, Italy, Qatar and Italy. The first two citations involve defendants with Mexican and Australian marks. The cases were settled but I use them simply to illustrate the range of jurisdictions: *Francois Carrillo v. AUTOBUSES DE ORIENTE ADO, S.A. DE C.V.*, 18-cv-00347-NYW (District of Colorado December 21, 2018) and *Mrs. Jello, LLC v. Camilla Australia Pty Ltd*. 15-cv-08753 (D. NJ 8/1/2016).

But in another Colorado case involving a Qatar trademark and Azerbaijan registrant whose domain name was registered with Name.com located in Colorado, the Court in *Mehdiyev v. Qatar National Tourism Counsel*, 1:19-cv-03353 (D. Colorado 4/1/21) vacated the UDRP award on summary judgment. Other challenges that went to judgment include: *Walter v. Ville de Paris,* 4:2009cv03939 (S.D. Texas Houston Div. July 5, 2012) (defendant owns a French trademark) entered judgment in favor of US domain name registrant together with statutory damages of $100,000. In *Dent v. Lotto Sport Italia SpA,* CV-17-00651-PHX-DMF (D. Arizona March 10, 2020) the Court annulled the UDRP award in *Lotto Sport Italia S.p.A. v. David Dent,* D2016-2532 (WIPO February 13, 2017) (defendant owns an Italian trademark) and granted plaintiff-domain name registrant attorney's fees. In *Direct Niche, LLC v. Via Varejo S/A*, 15-cv-62344

(S.D. Fla., August 10, 2017), aff'd 898 F.3d 1144 (11th Circuit August 3, 2018), though, the Court sustained the UDRP award (US registrant and Brazil (common law) mark owner.

The most recent case in this litany of US based registrants challenging UDRP awards is *Richard Blair v. Automobili Lamborghini S.p.A.* Case CV-22-01439-PHX-ROS (D. Ariz. Jul. 14, 2023) (Italian trademark owner). The defendant (earlier the Complainant in the UDRP) moved to dismiss the action which the Court denied, setting up a further motion in the future for summary judgment.

In reaching its tentative conclusion, the Court referred to the Panel's assessments in the underlying UDRP decision. The Panel stated that it "does not regard the Complainant's . . . position in the United States as relevant to its trade mark position in Canada, *it being its Canadian trade marks upon which it is relying in this administrative proceeding.*" Id. at 18 (emphasis added). While it is true about the "territorial nature of trademarks" the Panel was not addressing that issue because it is irrelevant under the UDRP. In these passages, the Panel is simply recapping the evidentiary requirements of the UDRP that in order for complainant to have standing it must have a trademark *somewhere*, and here it "is not only a registered trade mark in Canada, but . . . is likely also, in the view of the Panel, to be a common law or unregistered trade mark in Canada." Id. at 12. As such Agros Trading Confectionery Spolka Akcyjna had standing and it followed from the evidence of record (as the Panel assessed it) that the disputed domain names were registered and were being used in bad faith.

In challenging that conclusion, Michaels has a triable claim that arises under federal law granted under the ACPA specifically under Section 1114(2)(D)(ii)(iv) (which is what he claims in his pleadings). Whether he prevails on the merits is entirely different from having a statutory

right to make his claim under "federal law." That is presently before the court in the summary judgment motion. Looking at the ACPA jurisprudence that has developed over the past 23 years, though, reinforces the conclusion that Congress intended the word "mark" in Sec. 1114(2)(D)(ii) to mean any mark. If this were not its intention US registrants (which can also include non-US registrants whose registrations are held by US registrars) would be nonsuited against defendants owning marks certified by other national jurisdictions. Such a reading undercuts Congress' Policy for a blanket right to challenge UDRP awards.

For the foregoing reasons, the two recent US Supreme Court decisions on the issue of extraterritoriality are not relevant authority to civil actions by US based registrants because Congress expressly granted the right for registrants to have their day in court, which means that "Michaels' claims do [ ] 'arise under' federal law." This being the case, the motion for summary judgment as scheduled should be heard on the merits as it is within the Court's jurisdiction.

                                                            Respectfully submitted,

                                                            Gerald M. Levine

New York, NY.
August 21, 2023

Cc: David Michaels, Pro Se Plaintiff
    david@davidmichaels.org
    LIPSITZ GREEN SCIME CAMBRIA LLP
    Jonathan W. Brown, Esq.
    jbrown@lglaw.com
    For Defendant